710 A.2d 1045 (1998)
311 N.J. Super. 607
Russell PALMUCCI, Plaintiff-Appellant,
v.
BRUNSWICK CORPORATION d/b/a Mercruiser and Sanborn Marine Center, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1998.
Decided May 21, 1998
Ira Gottlieb, Roseland, for plaintiff-appellant (Lasser Hochman, attorneys; Mr. Gottlieb, on the brief).
Kevin M. McKeon, Marlton, for defendant-respondent Brunswick Corporation (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. McKeon, on the brief).
William E. Paulus, for defendant-respondent Sanborn Marine Center (Charles P. Hopkins, II, attorney, Shrewbury; Laura G. Degnan, Hackensack, on the brief).
Before Judges STERN, KLEINER and KIMMELMAN.
The opinion of the court was delivered by *1046 KLEINER, J.A.D.
In this appeal, we are required to compare two separate provisions of the Uniform Commercial Code: N.J.S.A. 12A:2-608 and N.J.S.A. 12A:2-719.
N.J.S.A. 12A:2-608 provides:
(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
N.J.S.A. 12A:2-719 provides:
(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,
(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Chapter and may limit or alter the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.
(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

I
Plaintiff, Russell Palmucci, a boat enthusiast, purchased from defendant Sanborn Marine Center (Sanborn) a new 5.7 liter engine manufactured by defendant Brunswick Corporation d/b/a/ Mercruiser (Brunswick). Sanborn installed the engine in a boat which plaintiff already owned. After approximately three to five hours of use, it developed problems of an unknown cause. Plaintiff brought the boat back to Sanborn which, after consulting with Brunswick, agreed to fix the problem. However, plaintiff demanded either a new engine or a refund. When Sanborn refused either to provide plaintiff with a new engine or to refund the purchase price, plaintiff placed the boat in storage. Plaintiff then filed a complaint alleging breach of warranty under the Uniform Commercial Code, violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -47, strict liability in tort, and negligence.
Prior to trial, plaintiff sought to call Brunswick's expert witness as a witness in his direct case. Plaintiff's application was denied. At trial, when plaintiff rested his case, the trial judge granted defendants' joint application for a directed verdict pursuant to Rule 4:37-2 and Rule 4:40-1.
Plaintiff appeals, contending that he did, in fact, prove a prima facie case under each count of his complaint, thus precluding a directed verdict, and that the trial court erred when it barred him from using Brunswick's expert as a witness in his direct case. We disagree and affirm.

*1047 II
On July 25, 1995, plaintiff took delivery of his boat with the new engine sold to him and installed by Sanborn. On that same date, plaintiff was given a warranty book containing the following conspicuously written engine warranty:
Our obligation under this Warranty shall be limited to repairing a defective part, or at our option, refunding the purchase price or replacing such part or parts as shall be necessary to remedy any malfunction resulting from defects in material or workmanship as covered by this Warranty.
The warranty also conspicuously provided that all incidental or consequential damages were excluded and that there were no warranties of merchantability and fitness. Other implied warranties were limited to the life of the warranty, which was one year from the date of purchase. The warranty also stated: "Engine noise does not necessarily indicate a serious engine problem. If diagnosis indicates a serious internal engine condition which could result in a failure, condition responsible for noise should be corrected under the warranty."
Plaintiff explained at trial that on the date of delivery he drove the boat from the Sanborn location to his home in Point Pleasant. That trip took approximately one hour. Two weeks later, plaintiff took a boat trip with some friends. They traveled one hour to their intended destination. On the return trip, the engine began to make a loud noise. Plaintiff indicated the noise sounded like the engine had no oil. Plaintiff shut the engine down immediately.
Plaintiff indicated that he opened the hatch and looked for oil on the engine and any parts that might have come loose. He discovered that the engine did have oil. Based on his prior boating experience and his own experiences working with and repairing engines, he concluded that the noise he heard was "definitely in the valve train." He restarted the engine and proceeded to his home. He estimated that the total use of the new engine was between three and five hours.
The following day plaintiff contacted Sanborn. Plaintiff was directed to bring the boat in for inspection. Thereafter, plaintiff was informed by telephone by a Sanborn employee that the "studs pulled." When plaintiff returned to Sanborn, he was advised that Sanborn intended to replace the heads.[1] Plaintiff informed Sanborn he did not want the boat repaired. He explained that he had bought a new engine and he wanted a new engine. Plaintiff testified that Sanborn informed him that Brunswick would not replace the engine.

III
The warranty in this case is permitted under the provisions of N.J.S.A. 12A:2-719, supra, because the parties' intent to limit remedies was "clearly expressed." N.J.S.A. 12A:2-719 cmt. 2. Plaintiff contends that N.J.S.A. 12A:2-608 permitted him to revoke acceptance of the engine because the defect substantially impaired the product's value to him. Although revocation of acceptance is available to the purchaser of a defective product pursuant to N.J.S.A. 12A:2-608, that right does not accrue where, as here, the product is sold with a limitation of remedy. Under N.J.S.A. 12A:2-719(2), plaintiff was not entitled to relief under section 12A:2-608 unless circumstances caused the limited remedy "to fail of its essential purpose." N.J.S.A. 12A:2-719(2).
Although the U.C.C. does not explicitly require a buyer of a defective product to allow a seller to "cure" the defect in a product after the buyer has accepted it, the warranty in this case, which is permitted under the U.C.C., gave the manufacturer the right to repair or replace at its option. Since plaintiff did not abide by the requirements of the warranty in that he did not allow the manufacturer to use the remedy the warranty permitted, he was not entitled to recovery under his breach of warranty claim. A directed verdict was therefore appropriate. See R. 4:37-2(b); R. 4:40-1.
*1048 N.J.S.A. 12A:2-719 specifically permits a warranty contract to limit remedies available to a buyer and to provide that the seller may repair a defective product instead of permitting the buyer to revoke acceptance of a defective product within the scope of N.J.S.A. 12A:2-608. Here, defendants took advantage of N.J.S.A. 12A:2-719 and provided for remedies in addition to or in substitution for those provided in the U.C.C. "by limiting the buyer's remedies to ... repair and replacement of non-conforming goods or parts...." Ibid. Since the warranty excludes warranties of fitness and merchantability, limits the duration of other implied warranties to one year from the purchase date, and states "our obligation ... shall be limited" to repairing, refunding, or replacing, at the seller's option, the provision meets the requirements embodied in N.J.S.A. 12A:2-719(1)(b), that the remedy is "expressly agreed to be exclusive, in which case it is the sole remedy." (emphasis added)
We thus conclude that plaintiff had an obligation to allow defendants to try to repair the engine. While defendants did not have the statutory right under the U.C.C. to cure any defect discovered after acceptance of the engine, defendants did have a right to expect plaintiff to comply with the terms of the warranty. Plaintiff's reliance on N.J.S.A. 12A:2-608 is therefore misplaced. The provisions permitting revocation of acceptance are inapplicable where the terms of a warranty limit the purchaser's remedies.
Even if N.J.S.A. 12A:2-608 were applicable, because defendants never had a chance to try to repair the engine, we cannot infer that the defect, although not identified, was serious and incapable of repair. Thus, it is not possible to conclude that the defect caused a substantial impairment in value under N.J.S.A. 12A:2-608(1). See General Motors Acceptance Corp. v. Jankowitz, 216 N.J.Super. 313, 334, 523 A.2d 695 (App.Div. 1987) ("The buyer has the burden to prove that the revocation was proper and justified, including proof that the breach caused a substantial impairment in the value of the contract to the buyer."); see also Herbstman v. Eastman Kodak Co., 68 N.J. 1, 9, 342 A.2d 181 (1975) ("The requirement that there must be substantial impairment of value before the buyer may revoke acceptance precludes revocation for trivial defects or defects which may be easily corrected."). Further, defendant's warranty did not fail of its essential purpose because defendant was not allowed the opportunity to repair the engine. See N.J.S.A. 12A:2-719(2); Jankowitz, supra, 216 N.J.Super. at 329, 523 A.2d 695 ("[T]he exclusive remedy of repair and replacement of defective parts fails of its essential purpose if, after numerous attempts to repair, the [boat] did not operate as a new [boat] should free of defects.").
Here, the most plaintiff had proven at trial was that the engine made noise and lost power, and that while Sanborn's mechanics thought the "studs had backed out," plaintiff's own examination and that of defendant's expert showed that that was not the case. Plaintiff did not present any other evidence to show if anything else might have been wrong with the engine. He had not had his own mechanic examine it nor had he attempted to have anyone else determine what was wrong with it. Thus, plaintiff failed to prove a prima facie case that the defect in the engine substantially impaired its value to him.[2]
Lee R. Russ, Annotation, What Constitutes "Substantial Impairment" Entitling Buyer to Revoke His Acceptance of Goods Under U.C.C. § 2-608(1), 38 A.L.R. 5th 191 (1996), discusses what type of evidence a buyer must put forth in order to prove that the non-conformity substantially impaired the value of the item to him or her:

*1049 While no list could be exhaustive of the potential circumstances that may come into play, the considerations tend to include: the nature of the defects; the cost and length of time required for repair; whether past repair attempts have been successful; the degree to which the goods can be used while repairs are attempted; the degree to and ways in which the buyer is inconvenienced by the nonconformities; and the availability and cost of alternative goods pending repair attempts.

[Id. at 223.]
Plaintiff simply failed to prove any of these items. Accordingly, a directed verdict was appropriate.

IV
At trial, plaintiff established that it was defendant Brunswick's policy not to replace an engine unless it was more than seventy percent defective. Plaintiff contends that Brunswick's policy violates the Consumer Fraud Act, specifically, N.J.S.A. 56:8-2.[3] We disagree.
We are guided by Kugler v. Romain, 58 N.J. 522, 279 A.2d 640 (1971), in which the Court discussed the concept of unconscionability: "Thus we believe that in consumer goods transactions such as those involved in this case, unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like, which are stamped unlawful under N.J.S.A. 56:8-2." Id. at 544, 279 A.2d 640. A breach of warranty or breach of contract is not per se unfair or unconscionable and does not alone violate the Consumer Fraud Act. Gennari v. Weichert Co. Realtors, 288 N.J.Super. 504, 533, 672 A.2d 1190 (App. Div.1996), modified, 148 N.J. 582, 691 A.2d 350 (1997); D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J.Super. 11, 25, 501 A.2d 990 (App.Div.1985).
The fact that Brunswick has an internal policy determining when it will replace an entire engine cannot equate with an unconscionable business practice. Under its warranty, Brunswick had the right to repair or replace as it chose. It had the discretion to repair when it wished to do so or to replace an entire engine if it elected to do so.
In D'Ercole Sales, supra, the plaintiff had purchased a tow truck from Fruehauf Corporation, which custom built and assembled the vehicle. Parts of the truck, the chassis, cabin, engine and drive train, had been manufactured by General Motors and purchased from Beyer Brothers, a General Motors dealer. Id. at 13-14, 501 A.2d 990. The tow truck broke down the day it was delivered and several times thereafter even though Beyer Brothers tried to rectify the problem. It was not until four to six weeks later that Beyer Brothers determined that the problem had been caused by Fruehauf. Id. at 14, 501 A.2d 990. But Fruehauf refused to acknowledge any responsibility and would do nothing to rectify the condition. Id. at 17, 501 A.2d 990.
One of the issues in that case was whether the Consumer Fraud Act applied to the action against Fruehauf. We held that mere breach of warranty would not be sufficient to prove a violation of the Consumer Fraud Statute. Id. at 25, 501 A.2d 990. We also held that Fruehauf's refusal "to honor its warranty and its intransigent and shoddy attitude toward plaintiff' did not constitute an unconscionable commercial practice. Id. at 28, 501 A.2d 990. We reaffirmed the concept that "unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like which are stamped unlawful under N.J.S.A. 56:8-2." Id. at 31, 501 A.2d 990. Fruehauf's disavowal, "offensive though it may be," was not deplorable enough to constitute an unconscionable commercial *1050 practice under the Consumer Fraud Act. Ibid.
Brunswick's policy to replace an engine only if more than seventy percent of it needed replacement, but to otherwise repair it pursuant to its limited warranty, is much less reprehensible than Fruehauf's refusal to do anything at all about a problem attributable to the manufacture of its own product. Moreover, the policy was not shown to be deceptive, or to constitute any kind of misrepresentation of the nature prohibited by the Act. Plaintiff's claim under the Consumer Fraud Act was therefore properly dismissed.

V
In parts one through four we have fully discussed Points I and II of plaintiff's appeal, which were asserted as follows:
POINT I
THE PLAINTIFF PROPERLY REVOKED ACCEPTANCE OF THE ENGINE PURSUANT TO THE UNIFORM COMMERCIAL CODE AND THE TRIAL COURT'S DISMISSAL OF PLAINTIFF'S BREACH OF WARRANTY CLAIM WAS PLAINLY ERRONEOUS.
POINT II
DEFENDANT BRUNSWICK'S APPLICATION OF ITS WARRANTY POLICY REGARDING REPLACEMENT OF ENGINES AND REFUNDS TO CONSUMERS IS UNCONSCIONABLE AND VIOLATES THE CONSUMER FRAUD ACT.
We find that the remainder of plaintiff's points of error are without sufficient merit to warrant discussion in a written opinion.[4]See R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] At trial, plaintiff described the head as the "part that sets over top of the pistons" and "a major component of the engine. An engine will not run without a head."
[2] Plaintiff's reliance on Zabriskie Chevrolet, Inc. v. Smith, 99 N.J.Super. 441, 240 A.2d 195 (Law Div.1968), in support of his contention that he had the right to revoke acceptance without first affording defendants the opportunity to cure the defect is misplaced. As we read Zabriskie, that decision hinged on an application of N.J.S.A. 12A:2-508, as the buyer there had never accepted the automobile, id. at 457-58, 240 A.2d 195, and the decision did not apply N.J.S.A. 12A:2-608, although this section of the U.C.C. was discussed in the trial court opinion. N.J.S.A. 12A:2-508 provides a statutory right to cure where a buyer rejects a tender. Once a buyer accepts a product with a limited warranty, however, he must comply with the warranty before revocation under N.J.S.A. 12A:2-608 is applicable.
[3] N.J.S.A. 56:8-2 provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice....
[4] POINT III

SUFFICIENT PROOF WAS PRESENTED AT TRIAL TO SHOW THAT DEFENDANT SANBORN'S CONDUCT VIOLATED THE CONSUMER FRAUD ACT.
POINT IV
THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S CAUSE OF ACTION FOR STRICT LIABILITY IN TORT.
POINT V
THE TRIAL COURT ERRED BY BARRING PLAINTIFF FROM USING DEFENDANT BRUNSWICK'S EXPERT-EMPLOYEE'S OPINIONS.
POINT VI
THE TRIAL COURT ERRED BY DISMISSING PLAINTIFF'S NEGLIGENCE CLAIM AGAINST DEFENDANT SANBORN.
POINT VII
THE INTERESTS OF FAIRNESS REQUIRE REASSIGNMENT TO A NEW TRIAL JUDGE ON REMAND.