**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5086-17T3

MICHAEL AVERSANO and
KAREN AVERSANO, husband
and wife,

      Plaintiffs-Appellants,

v.

ENERGY SMARTS MECHANICAL,
LLC,

      Defendant-Respondent.

_____

          Argued May 21, 2019 – Decided June 11, 2019

          Before Judges Geiger and Enright.

          On appeal from Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. DC-000363-16.

          Joseph F. Trinity argued the cause for appellants (Trinity & Farsiou, attorneys; Joseph F. Trinity, on the briefs).

          John R. Lanza argued the cause for respondents (Lanza & Lanza, LLP, attorneys; John R. Lanza, of counsel; Monica Alayne Hoopes, on the brief).

PER CURIUM

Plaintiffs, Michael and Karen Aversano, appeal from a summary judgment order entered in favor of defendant, Energy Smarts Mechanical, LLC (ESM). Additionally, they appeal from an order denying their application to reopen discovery. We affirm both rulings.

Plaintiffs claim ESM negligently installed a geothermal heating and cooling (HVAC) system in their home. They filed suit on March 24, 2016, alleging ESM was liable for breach of contract, breach of implied covenant, negligent construction, unjust enrichment and violations of the Consumer Fraud Act (CFA). After ESM filed its Answer, the case was listed for trial on August 8, 2016. Neither party appeared for trial so the case was dismissed. The trial court later acknowledged this trial date was premature, as the original discovery end date would have been September 7, 2016.

Unaware the case had been dismissed, neither party requested an extension of the original discovery end date and the parties continued to exchange discovery. In August and September 2016, plaintiffs identified a first and second liability expert. Then, in December 2017, well over a year following the dismissal of their case, plaintiffs moved to reinstate their case, advising neither party had received notice of the initial trial date. When they moved for

2

reinstatement, plaintiffs did not seek to reopen discovery nor did they disclose an intention to name a third liability expert, namely, Al Jarvis. Their motion to reinstate was granted and a new trial date of January 22, 2018 was fixed.

Just three days after the new trial date was set, ESM moved for summary judgment and to disqualify plaintiffs' second liability expert. In response, plaintiffs served ESM with two expert reports from Jarvis. ESM then moved to bar Jarvis from testifying as an expert. The motion judge denied ESM's requests for summary judgment and to bar Jarvis from testifying but granted its request to bar plaintiffs' second expert from testifying. The parties were given another trial date of February 12, 2018, but that date was adjourned to April 30, 2018 to give ESM time to review Jarvis's reports.

ESM quickly responded to Jarvis' reports by serving plaintiffs with its own liability expert report. Then, ESM filed a second motion for summary judgment or alternatively, to disqualify Jarvis as an expert witness. ESM asserted, in part, that dismissal of plaintiffs' non-negligence claims was appropriate because they had signed an "Energy Star Certificate of Completion" form when ESM had concluded its work. That form specifically stated that if "any of the work had not been completed or if there were concerns in regards to any aspect of the work performed, the customer and contractor MUST resolve

3

any such issues BEFORE signing this form." Thus, ESM argued plaintiffs should not be able to take a position contrary to the representations they made in the form. ESM also contended plaintiffs' completion of the form resulted in their receipt of a $5000 government rebate, along with a $10,000 interest-free loan so they should not be able to "double-dip" by suing ESM.

In response to the summary judgment motion, plaintiffs sought to reopen discovery to obtain a new expert, advising Jarvis no longer wished to be involved in the case. Although the trial date was postponed to May 8, 2018, it did not proceed on that date. Rather, on May 25, 2018, the trial court denied plaintiffs' request for an extension of discovery and granted summary judgment in favor of ESM. The trial judge found plaintiffs could not prove their claims without expert testimony, that they needed competent proof of an "ascertainable loss" as a prerequisite to recovery under the CFA and that their non-negligence claims were subject to dismissal based on the plain language of the Certificate of Completion. Lastly, as Jarvis already had declined to serve as plaintiffs' expert, the court deemed the application to disqualify him as moot. Plaintiffs appeal from the order granting summary judgment and denying their application to reopen discovery.

A-5086-17T3

Plaintiffs first complain the trial court erred by failing to provide them "with all legitimate inferences" as to the evidence before it. Additionally, they argue the motion judge mistakenly found the circumstances regarding their retention of an expert were not "clearly beyond the control" of plaintiffs and their attorney. Plaintiffs also assert the motion judge erred by opining that legal fees and costs assessed against them could exceed the face amount of their damages claim and that their execution of a Certificate of Completion constituted a waiver. Lastly, they claim any prejudice to ESM in proceeding to trial is far outweighed by prejudice plaintiffs will suffer if they cannot proceed to trial.

We first address the order denying plaintiffs' application to reopen discovery. Ordinarily, "we decline to interfere with discretionary rulings involving discovery unless it appears that an injustice has been done." Cunningham v. Rummel, 223 N.J. Super. 15, 19 (App. Div. 1988). "[W]e apply an abuse of discretion standard to decisions made by . . . trial courts relating to matters of discovery." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citing Bender v. Adelson, 187 N.J. 411, 428 (2006)). "As it relates to extensions of time for discovery, appellate courts . . . have likewise

generally applied a deferential standard in reviewing the decisions of trial courts."  Ibid.

We note plaintiffs sought an extension of discovery after a number of trial dates had been set.  Therefore, their motion to extend discovery was governed by Rule 4:24-1(c), which provides that "[n]o extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown."  To demonstrate exceptional circumstances, we generally require a showing that the attorney diligently pursued the information sought during the discovery period but was frustrated from obtaining the discovery by circumstances largely beyond counsel's control.  Bender, 187 N.J. at 429.  Specifically, the moving party must show:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Castello v. Wohler, 446 N.J. Super. 1, 25 (App. Div. 2016) (quoting Rivers v. LSC Partnership, 378 N.J. Super. 68, 79 (App. Div. 2015)).]

A-5086-17T3

The motion judge found plaintiffs had not demonstrated exceptional circumstances justifying the extension. We agree with this assessment in light of plaintiffs' failure to explain why all expert discovery was not completed during the original discovery period and why, after two years of litigation, they were unable to secure an expert for trial. Indeed, it is uncontroverted that at least three liability experts graced this litigation but declined to appear for trial. By the time ESM's second motion for summary judgment was heard, a fifth trial date had been set and plaintiffs' third liability expert, Jarvis, had given notice he would not appear at trial. The trial court found "plaintiffs and/or their attorney had ample time to retain competent and reliable experts and had the ability to bind any of those experts to a contractual commitment to testify on behalf of plaintiffs." Although the motion judge did not question plaintiffs' need for a competent, reliable liability expert, he could not find these circumstances presented were clearly beyond the control of either plaintiffs or their attorney. We find the motion judge's extensive findings fully supported by the record. Thus, we find no error in the denial of the extension of discovery nor in the denial of plaintiffs' request to serve another expert report on the defense.

Next, we review the grant of summary judgment de novo, applying the same standard used by the trial court. Viewing the evidence "in the light most

A-5086-17T3

favorable to the non-moving party," a reviewing court must determine whether the competent evidential materials demonstrate "there is no genuine issue as to any material fact challenged[.]" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2(c)). "[W]hen the evidence is so one-sided that one party must prevail as a matter of law, the trial court should not hesitate to grant summary judgment." Id. at 540 (internal quotation marks and citations omitted). Accordingly, to defeat a motion for summary judgment, the non-moving party must "come forward with evidence that creates a 'genuine issue'" for trial. Id. at 529 (quoting R. 4:46-2). See also Rule 4:46-5(a) (stating "an adverse party may not rest upon the mere allegations or denials of the pleading.") "It should be a rare case where nothing whatsoever is submitted to contest the motion." Robbins v. City of Jersey City, 23 N.J. 229, 241(1957) (citation omitted).

Given these principles, we must decide whether the "competent evidential materials presented" were "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. We accord no "special deference" to the motion judge's "interpretation of the law and the legal consequences that flow from established facts[.]" Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A-5086-17T3

Nevertheless, "[t]he jurisdiction of appellate courts . . . is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." State v. Robinson, 200 N.J. 1, 19 (2009). Consequently, "the points of divergence developed in proceedings before a trial court define the metes and bounds of appellate review." Ibid.

Looking at plaintiffs' claims against ESM, we observe that to establish a cause of action for negligence, they had to prove the "defendant owed a duty of care, the defendant breached that duty, and injury was proximately caused by the breach." Siddons v. Cook, 382 N.J. Super. 1, 13 (App. Div. 2005) (citing Gilleski v. Comty. Med. Ctr., 336 N.J. Super. 646, 652 (App. Div. 2001)). "[I]t is ordinarily a plaintiff's burden to prove negligence, and . . . it is never presumed." Khan v. Singh, 200 N.J. 82, 91 (2009) (citation omitted).

As to plaintiffs' non-negligence claims, again, certain elements had to be established in order for them to recover damages on the basis of breach of contract, breach of implied covenant, unjust enrichment and violations of the CFA. To establish their breach of contract claim, plaintiffs were required to prove (1) the parties entered into a contract containing various terms; (2) they abided by the terms of the contract; (3) ESM did not do what it was required to do under the contract; and (4) ESM's breach or failure to abide by the contract

terms caused a loss to the plaintiffs. See Model Jury Charge (Civil), 4.10A, "The Contract Claim - Generally" (approved May 1998); see also Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016). Next, to recover on the basis of unjust enrichment, plaintiffs were required to show that ESM "received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). To prove a violation of the CFA, plaintiffs had to demonstrate unlawful conduct on the part of ESM, that they suffered an "ascertainable loss" and that a causal relationship existed between the unlawful conduct and the ascertainable loss. D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013). The CFA, N.J.S.A. 56:8-1 to 56:8-106, and its implementing regulations, N.J.A.C. 13:45A-16.2, are designed to protect consumers against improper selling practices of contractors with whom consumers deal directly. The CFA aims to prevent deception, fraud, and falsity, whether by acts of commission or omission. Talalai v. Cooper Tire & Rubber Co., 360 N.J. Super. 547 (Law Div. 2001). A breach of contract is not per se unfair or unconscionable and does not alone violate the CFA. Palmucci v. Brunswick Corp., 311 N.J. Super. 607 (App. Div. 1998).

Next, an implied covenant of good faith and fair dealing exists in all contracts, such that "neither party shall do anything which will have the effect

of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997) (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)). See Kalogeras v. 239 Broad Ave., LLC, 202 N.J. 349, 366 (2010) (covenant inherent in every contract). A party may obtain relief "if its reasonable expectations are destroyed when [the other party] acts with ill motives and without any legitimate purpose." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 226 (2005) (citations omitted). Thus, a breach of this implied covenant necessarily requires "[b]ad motive or intention" on the part of the breaching party. Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001). "The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Brunswick Hills Racquet Club, 182 N.J. at 225 (quoting 23 Williston on Contracts, § 63:22 at 513-14 (Lord ed. 2002) (footnotes omitted)).

The motion judge reviewed plaintiffs' negligence and non-negligence claims, but noted that "[o]ther than the negligence theory, neither party briefed, at any length, the motion to dismiss the balance of plaintiffs' claims. . . . The

lack of thorough briefing of these issues can be attributed to the fact that the motion arguments are inextricably interrelated." The motion judge then noted that its ruling "barring plaintiffs from producing an expert witness could be viewed as fatal to the remainder of plaintiffs' claims."

We affirm the grant of summary judgment to ESM, substantially for the reasons expressed by the motion judge in his fourteen-page written opinion. As the trial court observed, plaintiffs' signatures on the plainly worded Certificate of Completion attested to the satisfactory performance of ESM's work. Moreover, without an expert witness, plaintiffs could not establish how ESM negligently installed the HVAC system and breached its duty of care, causing injury to plaintiffs. Additionally, as the trial court pointed out, plaintiffs could not provide competent proof of damages attributable to ESM's alleged misconduct. Expert testimony was required, because "the matter to be dealt with is so esoteric that jurors of common judgment and experience [could not] form a valid judgment as to whether the conduct of defendant was reasonable." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 407 (2014) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)). Accordingly, we perceive no reason to disturb the grant of summary judgment in ESM's favor.

A-5086-17T3

Lastly, plaintiffs take issue with the motion judge questioning the viability of Jarvis' report and his mentioning the potential counsel fees plaintiffs could face if discovery was reopened. We are not persuaded this type of commentary, although providing context for the trial judge's rulings, distracted the motion judge from adhering to the legal principles governing this matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5086-17T3