[741 NYS2d 9]

Linda Frank et al., Appellants, v DaimlerChrysler Corporation, Defendant, and Ford Motor Company et al., Respondents.

First Department, March 28, 2002

### APPEARANCES OF COUNSEL

*John M. Mason* and *Janet Walsh* of counsel (*Law Offices of Gene Locks, PLLC,* and *Greitzer & Locks, LLC,* attorneys), for appellants.

*Martha Dye* of counsel (*Stuart Bodoff* and *John H. Beisner* on the brief; *O'Melveny & Myers, LLP,* attorneys), for Ford Motor Company, respondent.

*J. Andrew Langan* of counsel (*Howard Fetner* and *Douglas M. Poland* on the brief; *Kirkland & Ellis,* attorneys), for General Motors Corporation and another, respondents.

*Michael Hoenig* of counsel (*Hugh F. Young, Jr.,* and *Michael T. Wharton* on the brief; *Herzfeld & Rubin, P.C., Product Liability Advisory Council, Inc.,* and *Wharton, Levin, Ehrmantraut, Klein & Nash,* attorneys), for Product Liability Advisory Council, Inc., amicus curiae.

### OPINION OF THE COURT

NARDELLI, J.P.

In this appeal, we are asked to determine whether the Supreme Court properly dismissed, for failure to state a cause of action, plaintiffs' proposed class action, which is based upon a purported defect in the front seat backrests of certain vehicles.

Plaintiffs commenced this proposed class action in June 1999 on behalf of themselves and all New York residents who own a "Class Vehicle," which includes various specified automobiles manufactured by defendants Ford Motor Company (Ford), General Motors Corporation (General Motors), and Saturn Corporation (Saturn),[1] between 1993 and 1998. The class, as defined by plaintiffs, is estimated at 1,000,000 people and specifically excludes those individuals who allegedly suffered personal injuries as a result of the claimed "defect." The defect is defined

---

1. DaimlerChrysler Corporation was a defendant at the time the motions to dismiss this action were filed, but all claims asserted against it were dismissed, with prejudice, pursuant to stipulation, prior to the motion court's ruling which is the subject of this appeal.

by plaintiffs as a design utilizing a "single recliner mechanism" (SRM), which is a manually adjustable lever that fixes the angle of the seat backrest, and which is located only on the outboard side of the front seats.

Plaintiffs aver that the backrest, as designed, is unreasonably dangerous because "it is unstable and susceptible to rearward collapse in the event of a rear-end collision," in that if a Class Vehicle is struck from the rear by another vehicle "the force of the occupant's body against the backrest of the seat can result in the rearward collapse of the backrest," which in turn "can result * * * in neck and back injuries, paraplegia, quadriplegia, and even death." Plaintiffs further maintain that the seat defect was aggravated by certain additional design flaws, and that defendants knew or should have known of the hazardous condition, yet "made a conscious and deliberate decision" against implementing an improved design, which would have included an additional recliner mechanism on the inboard side of the seats.

Plaintiffs continue that defendants "knowingly and intentionally concealed from the public the foreseeable risk of harm from seat collapses" and that as a result, plaintiffs "suffered economic loss" in that the Class Vehicles and seats did not meet reasonable consumer expectations and posed an unreasonable risk of serious injury or death in the event of a rear-end collision. Plaintiffs maintain that class members were therefore compelled to "incur the expense of alternate transportation, or the expense of correcting the Defect."

Plaintiffs sought compensatory damages "measured by the cost of correcting the Defect, not to exceed $5,000 for each Class Vehicle," and interposed seven causes of action sounding in, respectively: (1) negligence; (2) strict liability; (3) breach of the implied warranty of merchantability; (4) negligent concealment and misrepresentation; (5) fraud; (6) unfair or deceptive business practices in violation of General Business Law §§ 349 and 350; and (7) civil conspiracy. Ford, General Motors and Saturn subsequently moved to dismiss the complaint for failure to state a cause of action and failure to state the fraud claims with sufficient particularity. The motion court, in an order entered on or about May 30, 2000, granted the motions and dismissed the complaint in its entirety. Plaintiffs appeal and we now affirm.

It is well established that in determining whether to grant a motion to dismiss based upon a failure to state a cause of action pursuant to CPLR 3211 (a) (7), the pleading is to be af-

forded a liberal construction (CPLR 3026), and the court should accept as true the facts alleged in the complaint, accord plaintiff the benefit of every possible inference, and only determine whether the facts, as alleged, fit within any cognizable legal theory (*Leon v Martinez*, 84 NY2d 83, 87-88; *Morone v Morone*, 50 NY2d 481, 484; *Sotomayor v Kaufman, Malchman, Kirby & Squire*, 252 AD2d 554; *Fischbach & Moore v E.W. Howell Co.*, 240 AD2d 157). Stated another way, the court's role in a motion to dismiss is limited to determining whether a cause of action is stated within the four corners of the complaint, and not whether there is evidentiary support for the complaint (*Bernstein v Kelso & Co.*, 231 AD2d 314, 318; *LoPinto v J.W. Mays, Inc.*, 170 AD2d 582, 583).

In view of the foregoing, and as the motion court correctly found, plaintiffs must plead actual injuries or damages, resulting from defendants' conduct, as an essential element of each of the first six causes of action. See, e.g., negligence (*Becker v Schwartz*, 46 NY2d 401, 410; *Merino v New York City Tr. Auth.*, 218 AD2d 451, 457, *affd* 89 NY2d 824); strict liability (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 110; *De Matteo v Big V Supermarkets*, 204 AD2d 932); breach of implied warranty[2] (*Winckel v Atlantic Rentals & Sales*, 159 AD2d 124; *Finkelstein v Chevron Chem. Co.*, 60 AD2d 640, 641, *lv denied* 44 NY2d 641); negligent misrepresentation (*Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536; *Tajan v Pavia & Harcourt*, 257 AD2d 299, 304, *lv dismissed in part and denied in part* 94 NY2d 837; PJI 2:230 [2001]); fraud (*Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 407; *Cohen v Houseconnect Realty Corp.*, 289 AD2d 277); and General Business Law §§ 349 and 350 (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25-26; *Scott v Bell Atl. Corp.*, 282 AD2d 180, 183-184, *lv granted in part and dismissed in part* 97 NY2d 698).

Plaintiffs herein, with regard to the issue of damages, have, as previously noted, specifically excluded from the putative class "all persons who have suffered personal injury as a result of the rearward collapse of a seat." Indeed, plaintiffs do not allege that they have been in the type of accident that allegedly triggers the defect; that the seat back in any of the vehicles they own had, in fact, collapsed; or that they have suffered an

---

2. For a detailed analysis of whether the elements of New York's causes of action for strict products liability and breach of implied warranty are always "coextensive," and whether the latter can be broader than the former, see *Denny v Ford Motor Co.* (87 NY2d 248).

injury as the result of the anticipated malfunction. In sum, plaintiffs maintain that if their vehicles were to become involved in accidents, and if the accidents were rear-end collisions, and if the accidents were severe enough, their front seats might deform or collapse rearward and, consequently, the hypothetical malfunction might cause them to be injured. Thus, while plaintiffs claim that the defect is "presently manifested," they essentially argue that the breach of duty, the purported design defect, is itself the injury, and their damages as well, as they do not allege any actual malfunction.

Plaintiffs' claims, which defendants characterize as "tendency to fail" types of claims, have been addressed, in one form or another, by the United States District Court for the Southern District of New York, as well as a number of other courts in various jurisdictions. In *Feinstein v Firestone Tire & Rubber Co.* (535 F Supp 595 [SD NY 1982]), plaintiff interposed causes of action sounding in breach of implied warranty of merchantability, strict liability, negligence, reckless disregard, fraud and deceit, arising out of allegations that defendant's "Firestone 500" steel-belted radial tires " 'will suffer blowouts, tread separation and chunking, steel belt separation, or shifting, bead distortion, sidewalk blisters and cracks, and out of round conditions.' " (*Id.* at 601.) Plaintiffs, as a result of the foregoing, sought " 'replacement on a fairly adjusted basis of all Radial 500 tires * * * with steel-belted radial tires which are safe and free of defects or the equivalent in dollars' " (*id.* at 599).

The District Court, in addressing motions for class certification, held that those plaintiffs whose tires had not malfunctioned could not maintain a cause of action for breach of implied warranty of merchantability since "[t]ires which lived full, productive lives were, by demonstration and definition, 'fit for the ordinary purposes' for which they were used; hence they were 'merchantable' under U.C.C. § 2-314" (*id.* at 602). Plaintiffs, in other words, failed to establish the necessary element of damage, and the court rejected plaintiffs' argument "that a 'common' defect which never manifests itself 'ipso facto caused economic loss' and breach of implied warranty" (*id.* at 603), notwithstanding the fact that reports by the National Highway Traffic Safety Administration (NHTSA), and the House Committee on Interstate and Foreign Commerce, indicated that some of the tires had failed, or the fact that other complainants had commenced actions for actual injury or death, or that Firestone had entered into a voluntary recall

program concerning the tires in question. The court further opined that "[l]iability does not exist in a vacuum; there must be a showing of some damage, which then may lead to further issues of quantum" (*id.* at 602). The court, in conclusion, declined to certify the proposed class with respect to the remaining causes of action for the very same reasons.

In *Weaver v Chrysler Corp.* (172 FRD 96 [SD NY]), allegedly defective integrated child safety seats, the shoulder clips of which purportedly unlatched and separated, gave rise to a putative class action, under the theories of fraud, negligent misrepresentation, breach of implied warranty, and violation of the New York State Consumer Protection Act, General Business Law § 349. The court dismissed the complaint, having determined that plaintiffs had not sufficiently pleaded damages. "Where, as here, a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies" (*id.* at 100).

In *Hubbard v General Motors Corp.* (1996 WL 274018, *1, 1996 US Dist LEXIS 6974, *2 [SD NY, May 22, 1996, 95 Civ 4362]), a putative class action, plaintiff asserted causes of action for fraud, negligent misrepresentation and breach of express and implied warranties, in that certain cars manufactured by defendant had a " 'defective braking system', which causes the vehicles not to stop properly upon application of the brakes." As in *Feinstein* and *Weaver*, and like the claims presently before us, plaintiff in *Hubbard* did not allege that his brakes had malfunctioned, but instead argued that he had suffered a reduction in the resale and trade-in value of the vehicle, and pointed to an NHTSA investigation, as well as complaints made to the NHSTA about the braking systems in other vehicles, as evidence of the purported defect. Plaintiff in *Hubbard*, also like the appellants herein, "[s]pecifically excluded from the reputed class * * * 'any persons who have suffered personal injury as a result of defects' in the Suburbans" (*id.* at *1, at *3).

The court, upon defendant's motion, dismissed the complaint because plaintiff had failed to plead damages, since there were no allegations that plaintiff had experienced performance problems or attempted to resell his vehicle only to discover the value had decreased. The court held that "[p]urchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own. * * * Thus, a Suburban that performs satisfactorily and never exhibits the alleged braking system defect is fit for the purposes intended and does not give rise to a breach of warranty claim or any other" (*id.* at *3, at *9-10).

Courts, other than New York's Southern District, have reached the same conclusion in cases involving various alleged defects in automobiles. In *American Suzuki Motor Corp. v Superior Ct.* (37 Cal App 4th 1291, 44 Cal Rptr 2d 526); the California Court of Appeal had before it a class action wherein plaintiffs alleged that the design of the Samurai, a sport utility vehicle manufactured by Suzuki, " 'create[d] an unacceptable risk of a deadly roll-over accident when driven under reasonably anticipated and foreseeable driving conditions' " (*id.* at 1293, at 528). The plaintiffs, like those herein, did not allege that they had suffered any personal injuries or property damage as the result of the purported design defect and the issue, as framed by the court in *American Suzuki*, was whether plaintiffs could state a cause of action for breach of implied warranty where "they have suffered no personal injury or property damage from a vehicle they claim is defectively designed, and it is impliedly conceded that their vehicles have—since the date of purchase—remained fit for their ordinary purpose" (*id.* at 1293, at 527). In dismissing plaintiffs' breach of implied warranty claims, the court found that:

> "[T]he evidence presented demonstrated that only a small percentage of the Samurais sold during the class period have been involved in rollover accidents, and real parties have impliedly conceded that nearly all of them have not. Because the vast majority of the Samurais sold to the putative class 'did what they were supposed to do for as long as they were supposed to do it' (*Feinstein v. Firestone Tire and Rubber Co., supra*, 535 F. Supp. at p. 603), we conclude that these vehicles remained fit for their ordinary purpose. This being so, their owners are not entitled to assert a breach of implied warranty action against Suzuki * * *" (*id.* at 1298-1299, at 531).

See also, e.g., *Yost v General Motors Corp.* (651 F Supp 656, 657 [D NJ 1986] [where the court dismissed the proposed class action claims for fraud, breaches of warranty and violations of the Federal and New Jersey RICO Acts, which were based on claims that oil, water and/or coolant " 'tend to mix' " in the crankcase of the subject engines, which, "if [a] leak occurs," is " 'likely to cause major if not irreparable engine damage' " or " 'may create potential safety hazards,' " as a result of which the cars lost a portion of their resale value. The court held that "[t]he basic problem in this case is that plaintiff * * * has not

alleged that he has suffered any damages. * * * All he is able to allege is that the potential leak is 'likely' to cause damage and 'may' create potential safety hazards" (*id.*)]); *Carlson v General Motors Corp.* (883 F2d 287, 289 [4th Cir 1989], *cert denied* 495 US 910 [affirming the District Court's dismissal of a cause of action for breach of implied warranty of merchantability, based upon the diminished resale value of cars equipped with diesel engines which were "inherently defective and subject to frequent breakdowns," where products did not actually malfunction]); *Briehl v General Motors Corp.* (172 F3d 623 [8th Cir 1999][3] [where the court affirmed the dismissal of claims for fraudulent misrepresentation and concealment, breach of express warranty, breach of implied warranty, and violations of the state consumer protection statutes, based on allegations that the anti-lock braking systems in the automobiles in question were defective. The court noted that plaintiffs excluded any claims for personal injury or property damage, that there were no allegations that plaintiffs' brakes actually malfunctioned or failed, or that anyone actually sold a car at a reduced value and, thus, the court concluded that plaintiffs failed to plead damages]); and *In re Air Bag Prods. Liab. Litig.* (7 F Supp 2d 792, 795, 804 [ED La 1998] [where the court dismissed tort, negligence per se, strict liability, and implied warranty claims brought by a putative class alleging defective air bags which deploy with sufficient force to injure or kill front seat occupants, although, as the court noted, "no plaintiff maintains they have done so." The court found, inter alia, that "the absence of manifest injury is so fundamental a deficiency in tort or implied warranty claims that such claims are more appropriately dismissed than preserved"]). Indeed, courts in Maryland and New Hampshire have recently dismissed identical claims, brought by the same plaintiffs' attorneys, against the same defendants as in the case before us, on the grounds that plaintiffs failed to plead the essential element of damages (*see, Lloyd v General Motors Corp.*, slip op No. 298 [Md Ct Spec App 2001]; *Nicholas v General Motors Corp.*, slip op No. 99-C-566 [NH Sup Ct 1999]), *lv denied* slip op No. 2000-061 [NH 2000]).

Plaintiffs, for the contrary position, rely on the decisions of two other courts, in New Jersey and Pennsylvania, which also

---

**3.** The court in *Briehl* opined that "[c]ourts have been particularly vigilant in requiring allegations of injury or damages in products liability cases," and went on to provide numerous examples of that proposition (*id.* at 627-628).

considered identical claims. In *Lipscomb v General Motors Corp.* (slip op No. 3235 [Pa Ct CP 2001]), the Pennsylvania trial court denied General Motors' motion to dismiss claims for breach of implied warranty of merchantability and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, which were based on allegations of defective car seats similar to those made herein, although it granted the motion as to claims for negligent and intentional failure to disclose and/or warn. The court, however, in rendering its decision, provided absolutely no reasoning for its conclusions and as a result, we find that it is of little persuasive value. Moreover, another Pennsylvania trial court has dismissed identical causes of action, which claims were based on purportedly defective tires, since the tires had never failed, and the plaintiff had never suffered a diminution in the value of the tires, or incurred any expense to inspect, repair or replace the tires, or obtain alternative transportation (*see, Grant v Bridgestone/ Firestone, Inc.*, 2001 WL 1807766 [Pa Ct CP, June 12, 2001]).

In the other case relied upon by plaintiffs, *Green v General Motors Corp.* (slip op No. L-4643-99 [NJ Super Ct 2000]), the New Jersey Superior Court likened plaintiffs' claims to medical monitoring claims, which were recognized by the New Jersey Supreme Court in *Ayers v Township of Jackson* (106 NJ 557, 525 A2d 287). In *Ayers*, the court held that more than 300 residents of a township were entitled to damages for the cost of future medical surveillance after they had ingested well water contaminated with toxic pollutants. The court concluded that even though no claims were asserted by plaintiffs seeking recovery for specific illnesses caused by their exposure to the chemicals, plaintiffs had been advised by their physicians to undergo "medical surveillance" to permit the earliest possible diagnosis and treatment of illnesses, a cost they would not have incurred absent their exposure to the toxic chemicals.

The New Jersey Supreme Court subsequently clarified its holding in *Ayers* and made it clear that the parameters within which the medical monitoring doctrine was to apply are very narrow and limited to toxic exposure situations (*Theer v Philip Carey Co.*, 133 NJ 610, 628 A2d 724). The court in *Theer* opined that:

> "*Ayers* indicates that medical-surveillance damages constitute a special compensatory remedy designed to address the unique harm entailed in an increased risk of future injury arising from the exposure to toxic chemicals. * * *

"However, we note that such a cause of action applies only to persons who have been *directly* exposed to hazardous substances" (*id.* at 627, at 733 [emphasis in original]).

Thus, we disagree with the New Jersey Superior Court's expansion in *Green* of the medical monitoring doctrine to claims involving a "latent defect" in a seat that is "susceptible" to collapsing "if" the car is struck from behind with sufficient force, which in turn might lead to physical injury.

Public policy concerns, in our view, also dictate that we reject plaintiffs' claims, for it would be manifestly unfair to require a manufacturer to become, in essence, an indemnifier for a loss that may never occur. Plaintiffs' argument, basically, is that as an accident becomes foreseeably possible, upon the occurrence of certain contingencies, due to a design aspect of a product, the manufacturer must retrofit the product or otherwise make the consumer whole. However, under such a schematic, as soon as it can be demonstrated, or alleged, that a better design exists, a suit can be brought to force the manufacturer to upgrade the product or pay an amount to every purchaser equal to the alteration cost. Such "no injury" or "peace of mind" actions would undoubtedly have a profound effect on the marketplace, as they would increase the cost of manufacturing, and therefore the price of everyday goods to compensate those consumers who claim to have a better design, or a fear certain products might fail. In *Lee v General Motors Corp.* (950 F Supp 170), a case very similar to the one at bar, where plaintiffs sustained no personal injuries, United States District Judge Pickering aptly noted that:

"Not every unfortunate incident that occurs in life, not every discomfort, not every unsatisfactory commercial transaction, not every disagreement among people and/or corporations, gives rise to a cause of action * * * If Courts were to allow cases such as this to go forward, the costs of doing business would be so burdensome and so expensive that suppliers, manufacturers, and most consumers would suffer greatly. The only persons that would benefit by permitting cases such as this to go forward would be the lawyers handling the case and perhaps the few consumers directly involved in the litigation."
(*Id.* at 175.)

This is not to say that plaintiffs, to the extent that they may have some legitimate concerns, are not without recourse. The

National Traffic and Motor Vehicle Safety Act (49 USC § 30101 *et seq.*) provides, inter alia, that "[a]ny interested person" may petition the NHTSA to conduct an investigation into whether a motor vehicle contains a safety related defect or fails to comply with a safety standard (*id.* § 30162 [a]). If the NHTSA determines that such a defect does exist, it will direct the manufacturer to repair, replace or recall the vehicle at no charge to the owner (*id.* §§ 30118, 30120). If the consumer's petition is denied, the NHTSA must publish the reasons for such action, and the party whose petition has been denied may obtain judicial review of the NHTSA's decision (*id.* § 30161). It is our finding herein that the remedy which will not only best promote consumer safety, but will also address the parties' concerns regarding the possible consequences of a rear-end collision if the purported defect is not remedied, is to petition the NHTSA for a defect investigation (*see also, American Suzuki Motor Corp. v Superior Ct., supra*, 37 Cal App 4th 1291, 1299-1300, 44 Cal Rptr 2d 526, 531-532).

In sum, plaintiffs have not been involved in any accidents and have not suffered any personal injuries or property damage. Moreover, plaintiffs do not allege that any seat has failed, been retrofitted or repaired, nor have plaintiffs attempted to sell, or sold an automobile at a financial loss because of the alleged defect. We find, therefore, that the motion court properly dismissed the first through sixth causes of action as the result of plaintiffs' failure to plead any actual injury, and properly dismissed the seventh cause of action for civil conspiracy since no independent cause of action exists for such a claim (*see, Small v Lorillard Tobacco Co.*, 94 NY2d 43, 57).

Accordingly, the order of the Supreme Court, New York County (Jane Solomon, J.), entered on or about May 30, 2000, which granted the motions of defendants Ford, General Motors and Saturn to dismiss the amended complaint for failure to state a cause of action, should be affirmed, without costs.

TOM, SAXE and SULLIVAN, JJ., concur.

Order, Supreme Court, New York County, entered on or about May 30, 2000, affirmed, without costs.