Richard STATLER, D.C., individually and on behalf of all others similarly situated, Plaintiff,

v.

DELL, INC., a Delaware corporation, Defendant.

No. CV 10–3798.

United States District Court, E.D. New York.

March 30, 2011.

Hagens Berman Sobol Shapiro LLP, By: David S. Nalven, Esq., Cambridge, MA, Hagens Berman Sobol Shapiro LLP, By: Steve W. Berman, Esq., Seattle, WA, Levetown & Jenkins, LLP, By: Michael P. Lewis, Esq., Washington, D.C., for Plaintiff.

Alston & Bird, LLP By Nelson A. Boxer, Esq., New York, NY, Alston & Bird, LLP, By: Jane Fugate Thorpe, Esq., Atlanta, GA, for Defendant.

WEXLER, District Judge.

This is an action commenced by Plaintiff Richard Statler ("Plaintiff"), against Dell, Inc. ("Dell") alleging several causes of action arising out of the alleged malfunction of five Dell computers purchased by Plaintiff in 2003. Plaintiff's amended complaint sets forth four causes of action, and seeks to represent a class of others similarly situated. Presently before the court is Defendant's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the amended complaint.

## BACKGROUND

### I. Factual Background

The facts set forth below are drawn from the allegations of the amended complaint, as well as affidavits and documents properly before the court.

### A. Plaintiff's Purchase and Experience with Dell Optiplex Computers

In late 2003, Plaintiff purchased five Dell Optiplex computers directly from Dell. The computers were purchased for use in Plaintiff's chiropractic business. Four of the five computers were placed in patient treatment areas, and one was used to handle server functions. Accompanying the computers was a five year limited warranty (the "Warranty").[1] The Warranty covers "defects in materials and workmanship," in "Dell-branded hardware products, including Dell-branded peripheral products." It further states that Dell's responsibility for covered defects "is limited to repair and replacement," and that Dell accepts no liability beyond the remedies provided for in the Warranty. With respect to the time period of the Warranty, it provides that "[t]he warranty period is not extended if we repair or replace a warranted product or parts."

The amended complaint details Plaintiff's personal experience with the computers. Without stating a particular date, Plaintiff states that "sometime" after purchase, each of the computers he purchased began to manifest "serious operational errors." The facts set forth in the amended complaint make clear that Plaintiff attributes the problems to faulty capacitors, a component part manufactured by an outside vendor. It is clear that the capacitors were present in the computers at the time of manufacture and delivery to Plaintiff.

Plaintiff states that he reported his problems to Dell customer service. Dell is alleged to have known, and covered up the fact that the problems experienced by Plaintiff were common to its Optiplex computers, and were traceable to defective capacitors. Although Dell repair technicians were sent to Plaintiff's office, the problems persisted. Dell is alleged to have replaced faulty motherboards with others that were also "populated with defective capacitors." Ultimately, the Optiplex computers are alleged to have either failed completely, or work only sporadically. Although the amended complaint makes reference to safety hazards alleged to be associated with defective leaking capacitors, Plaintiff nowhere alleges that he

---

1. Plaintiff argues that the warranty period was five years, while Defendant argues that the period was four years. For the purposes of this motion, the court accepts Plaintiff's characterization of the warranty period

or any of his patients or staff suffered any injury in connection with such alleged hazards.

## B. *Computer Defects and Plaintiff's Knowledge Thereof*

Plaintiff's complaint details the capacitor defects that are alleged to have been known by Dell since sometime during 2005, but were, according to Plaintiff, covered up by the company. Plaintiff alleges that he discovered the defects only upon reading a June 2010 article published in the New York Times (the "Times Article"). The court makes no finding with respect to the veracity of the information set forth in the Times Article. However, because Plaintiff relies heavily on that article to support both the facts alleged in his complaint, and the argument that his claims are timely, it is appropriate to consider the contents thereof, and its date of publication, in connection with this motion to dismiss.

The Times Article discusses facts alleged to have been revealed in recently unsealed documents that were produced in connection with a 2007 lawsuit filed against Dell in the United States District Court for the District of North Carolina (the "2007 Lawsuit"). The 2007 Lawsuit was brought by Advanced Internet Technologies, Inc., a company that purchased over 2,000 Optiplex computers from Dell. While the complaint in the 2007 Lawsuit does not specifically reference capacitor problems, it alleges widespread failure associated with the computers, including problems with the "motherboard, power supply and CPU fan failures." The 2007 Lawsuit also alleges that Dell knew, before 2005, of failures with its Optiplex line of computers. While Dell is stated to have initially honored its warranty obligations, it is alleged that they were later breached. The 2007 Lawsuit set forth causes of action for breach of warranty as well as state law claims of fraud, deceptive business practices, and breach of contract.

Documents produced in the 2007 Lawsuit are stated to have been unsealed shortly before publication of the Times Article. These documents are neither before the court nor considered for the truth thereof, but considered only for the purpose of determining the statute of limitations issue that is central to this motion. The documents bear out and amplify the allegations of the complaint in the 2007 Lawsuit. Specifically, the unsealed documents reveal the failure of millions of computers sold by Dell between 2003 and 2005. The Times Article attributes those problems to "an industrywide encounter with bad capacitors produced by Asian PC computer suppliers." The Times Article refers to internal Dell documents indicating that Dell shipped at least 11.8 million computers from May of 2003 through July of 2005 that contained the faulty components. Dell is stated to have known of capacitor and related motherboard problems, but to have concealed those defects.

In addition to facts set forth in the Times Article, Plaintiff's complaint refers to a Fall 2002 article noting that "an unnamed Dell source" confirmed Dell's "awareness that bad capacitors ... had made their way into manufacturer supply chains." The amended complaint also makes reference to what is described as "an obscure" internet blog article dated August 30, 2005. That article is entitled "Dell Won't Recall Defective Motherboards," and makes reference to the Dell computers at issue here. It refers specifically to defective motherboards and defective capacitors.

In addition to the information referred to above, and, in further support of its motion, Dell has submitted the company's Form 10–Q for the quarterly period ended October 2, 2005 (the "2005 Form 10–Q").

The 2005 Form 10–Q is a publicly available report required to be filed with the Securities and Exchange Commission. It notes that during the referenced quarterly period, Dell recognized "a product charge of $307 million for estimated warranty costs of servicing or replacing certain Optiplex systems that include a vendor part that failed to perform to Dell's specifications." (Dell Form 10–Q at 9 n.(a), annexed to the declaration of Christina Hull Eikhoff, submitted with Dell's motion to dismiss).

### C. Allegations Regarding Statutes of Limitation

Plaintiff purchased his Optiplex computers in 2003, and did not commence this lawsuit until 2010. In anticipation of Dell's argument that Plaintiff's claims are time-barred, the amended complaint contains specific allegations as to why the complaint should be deemed timely. First, Plaintiff alleges that his claims did not accrue until the later of: (1) the last date on which repairs to his computers were made or attempted, and it became apparent that those repairs were unsuccessful or (2) the date upon which he "discovered his injuries." Plaintiff also states that his causes of action could not have accrued until he discovered, not only his "injuries" as referred to above, but also the precise defects that caused those injuries. Finally, Plaintiff argues that the applicable statutes of limitation should not be applied, in any event, on the grounds of fraudulent concealment and estoppel.

### II. The Causes of Action and the Motion to Dismiss

Plaintiff's complaint sets forth four separate causes of action. Specifically, Plaintiff alleges: (1) violation of the Federal Magnuson Moss Warranty Act 15 USC § 2308(a)(c) ("MMWA"); (2) violation of Section 2–314 of the New York Uniform Commercial Code ("UCC § 2–314"); (3) violation of Section 349 of the New York General Business Law ("Section 349"), and (4) unjust enrichment.

Defendant's motion seeks dismissal of all causes of action. First, all claims are alleged to be time-barred. Additionally, Plaintiff's Section 349 claim is alleged to be subject to dismissal because that statute does not apply where, as here, the product at issue is purchased for use in a business. The MMWA claim is sought to be similarly subject to dismissal on the ground that the computers at issue are not "consumer products." To the extent that Plaintiff's claims are based upon safety hazards, they are argued to be subject to dismissal because Plaintiff fails to properly allege any such cause of action. Finally, the unjust enrichment cause of action is sought to be an inappropriately stated quasi-contractual cause of action that cannot be stated where, as here, there was a sale pursuant to a contract. After outlining relevant legal principles, the court will turn to the merits of the motion.

### DISCUSSION

### I. Standards on Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45–46, 78 S.Ct. 99. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 127 S.Ct. at 1974, see also Ashcroft v. Iqbal, —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).

■ While heightened factual pleading is not the new order of the day, *Twombly* holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Williams v. Berkshire Fin. Grp. Inc.*, 491 F.Supp.2d 320, 324 (E.D.N.Y.2007), quoting, *Twombly*, 127 S.Ct. at 1959. In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. *Watts v. Services for the Underserved*, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. A pleading that does nothing more that recite facts and bare legal conclusions is insufficient to "unlock the doors of discovery ... and only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the action. *See Brass v. Amer. Film Techn., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Watts*, 2007 WL 1651852 *2.

## II. *Disposition of the Motion*

### A. *Timeliness of MMWA and NYUCC Claims for Breach of Warranty*

■ Claims brought pursuant to the MMWA and the NYUCC are governed by the four year statute of limitations set forth in section § 2–725 of the NYUCC. *Murungi v. Mercedes Benz Credit Corp.*, 192 F.Supp.2d 71, 79 (W.D.N.Y.2000); *see Woods v. Maytag Co.*, 2010 WL 4314313 *2 (E.D.N.Y.2010). That section provides that claims for breach of warranty must be commenced within four years of accrual. The statute specifically defines the date of accrual as:

> when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach*. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

NYUCC 2–725(2) (emphasis added). As the plain language of the statute makes clear, the statute of limitations begins to run "on tender of delivery," and knowledge of a defect has no effect whatever on the running of the statute. *See Brady v. Lynes*, 2008 WL 2276518 *11 (S.D.N.Y. 2008) (argument that breach occurs upon discovery is "contrary to black letter law"); *Morgan v. Abco Dealers, Inc.*, 2007 WL 4358392 *6 (S.D.N.Y.2007); *Orlando v. Novurania of America, Inc.*, 162 F.Supp.2d 220, 224 (S.D.N.Y.2001).

Plaintiff attempts to carve out the "repair or replace" remedy set forth in the Warranty to constitute a separate contractual obligation that could not have been breached until all attempts to repair or replace failed. In support of this analysis, Plaintiff relies on cases holding that repair obligations can place accrual of a cause of action beyond the date of delivery. Such cases, however, either: (1) involve specific contractual obligations that can be deemed to accrue after delivery, or (2) explicitly extend particular obligations beyond the UCC four year period of warranty. In such cases, courts find express warranties that explicitly extend to future perform-

ance. *Woods*, 2010 WL 4314313 *3; *Orlando*, 162 F.Supp.2d at 224.

In *Long Island Lighting Co. v. Imo Industries Inc.*, 6 F.3d 876 (2d Cir.1993), for example, relied upon by Plaintiffs, the Second Circuit held that a claim based upon an express to agreement to repair faulty generators did not accrue, as set forth in the warranty, until the generators were "in place"—an event that did not occur until years after delivery. *Id.* at 890. Similarly in *Shapiro v. Long Island Lighting Company*, 71 A.D.2d 671, 418 N.Y.S.2d 948, 950 (2d Dep't 1979), the Appellate Division held that while a breach of warranty claim should be dismissed as untimely, it also held that an explicit agreement to replace a defective heater for a ten year period allowed that claim to be brought after expiration of the four year period of warranty.

The plain language of the Warranty here makes the cases referred to above inapposite. The "repair or replace," language of the Warranty is simply language that limits Plaintiff's remedy in the event of breach—it does not create a warranty separate and apart from the product warranty. In such cases, the law is clear that attempts to repair a warrantied product, within the warranty period, do not toll the four year limitations period. *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 743 (2d Cir.1979) (noting that New York and other jurisdictions hold that attempts to remedy defects do not toll the U.C.C.'s four-year period of limitations); *Woods*, 2010 WL 4314313 *3; *Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical, Inc.*, 659 F.Supp.2d 332, 348–49 (N.D.N.Y.2009) (same). Indeed, the plain language of the Warranty states as much, providing that the warranty "is not extended if we repair or replace a warranted product or parts."

In light of the clear law recited above, as well as the plain language of the Warranty, the court holds that Plaintiff's warranty claims accrued at the time of delivery of the computers in 2003. That is the date when the Optiplex computers with allegedly defective capacitors were delivered, and Plaintiff's knowledge of such defects is of no moment. Since Plaintiff's warranty claims were not commenced until seven years after delivery, they are not timely.

The holding that the warranty claims are untimely requires the court to consider whether any equitable principle can be applied to save those claims. Plaintiff argues that his claims are saved by the equitable principles of fraudulent concealment and/or equitable estoppel.

The doctrine of equitable tolling applies where defendant's fraudulent conduct results in Plaintiff's lack of knowledge of a cause of action. *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir.2002). Equitable estoppel is a term that has been used to describe circumstances of fraudulent concealment of a cause of action, but also to describe circumstances where a plaintiff is aware of the existence of his cause of action, but the defendant's conduct caused him to delay in bringing his lawsuit. *Pearl*, 296 F.3d at 82; *see Chmiel v. Potter*, 2010 WL 5904384 *9 (W.D.N.Y. 2010); *Torre v. Columbia University*, 1998 WL 386438 *6 (S.D.N.Y.1998).

When these equitable doctrines apply, "the statute of limitations does not begin to run until 'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.' " *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir.1985). To take advantage of tolling, Plaintiff must be able to show that Defendant wrongfully concealed its ac-

tions, such that plaintiff was unable, despite due diligence, to discover facts that would allow him to bring his claim in a timely manner or that defendant's actions induced plaintiff to refrain from commencing a timely action. *See Statistical Phone Philly v. NYNEX Corp.*, 116 F.Supp.2d 468, 482 (S.D.N.Y.2000) (setting forth elements of federal doctrine of equitable tolling); *Wolf v. Wagner Spray Tech Corp.*, 715 F.Supp. 504, 508 (S.D.N.Y.1989) (setting forth elements of fraudulent concealment tolling doctrine); *Gleason v. Spota*, 194 A.D.2d 764, 599 N.Y.S.2d 297, 298 (2d Dep't 1993) (estoppel doctrine applies "where a plaintiff was induced by fraud, misrepresentation, or deception to refrain from timely commencing an action").

■ When deciding whether to toll the running of the statute of limitations, the issue is not whether Plaintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit. *Torre*, 1998 WL 386438 *8. Ultimately, tolling can apply only when a plaintiff has acted with reasonable diligence and can show extraordinary circumstances that justify the requested toll. *Chmiel*, 2010 WL 5904384 *9.

■ While Plaintiff's amended complaint details ongoing problems with his Optiplex computers, it does not state, with any precision, when those problems began, or the dates of service by Dell. Additionally, the court is in no position, at this stage of the proceedings, to make factual findings with respect to Dell's conduct. Discovery will uncover facts regarding Dell's conduct, as well as those that may ultimately support the conclusion that Plaintiff possessed more than enough information to commence a timely lawsuit. Such a conclusion cannot be reached, however, only upon consideration of the pleadings and other documents before the court on this motion. Accordingly, the court will not rule, at this time, whether equitable principles can toll the running of the statute of limitations, or estop Defendant from asserting a statute of limitations defense. The court therefore denies the motion to dismiss the warranty claims at this time. Such claims may or may not be saved by equitable tolling; it is simply too early to tell.

### B. General Business Law Section 349

#### i. Legal Principles

■ Section 349 makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the Sate of New York. N.Y. Gen. Bus. L. § 349(a). The statute provides for a private right of action that may be brought by "any person who has been injured by reason of any violation" of Section 349. N.Y. Gen. Bus. L. § 349(h). To state a claim pursuant to Section 349, a Plaintiff must show: (1) acts or practices that are "consumer oriented;" (2) that such acts or practices are deceptive or misleading in a material way and (3) that plaintiff has been injured by reason of those acts. *International Design Concepts, LLC v. Saks Inc.*, 486 F.Supp.2d 229, 238–39 (S.D.N.Y.2007); *see Gaidon v. Guardian Life Ins. Co. of America*, 94 N.Y.2d 330, 704 N.Y.S.2d 177, 182–83, 725 N.E.2d 598 (1999); *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000); *DePasquale v. Allstate Ins. Co.*, 179 F.Supp.2d 51, 58–59 (E.D.N.Y.2002).

■ "Deceptive acts," within the meaning of Section 349, are acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439, 450 (E.D.N.Y.2007) (citations omitted). The consumer oriented prong of the Section 349 claim requires a plaintiff to show that the practices complained of have a "broad

impact on consumers at large; 'private contract disputes unique to the parties . . . would not fall within the ambit of the statute.'" *New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 290, 662 N.E.2d 763 (1995), quoting, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741 (1995); *see also Shapiro,* 212 F.3d at 126; *International Design Concepts,* 486 F.Supp.2d at 239. The "consumer oriented" requirement does not preclude businesses from acting as plaintiffs in lawsuits pursuant to Section 349. Section 349 does, however, exclude from the statute private disputes that arise only between businesses. *See Dollar Phone Corp. v. Dun & Bradstreet Corp.,* 2010 WL 5313737 *3 (E.D.N.Y.2010); *Spirit Locker, Inc. v. EVO Direct, LLC,* 696 F.Supp.2d 296, 304 (E.D.N.Y.2010).

■■■ Actions brought pursuant to Section 349 must be commenced within three years of the date of accrual. *Gaidon v. Guardian Life Ins. Co. of America,* 96 N.Y.2d 201, 727 N.Y.S.2d 30, 35, 750 N.E.2d 1078 (2001); *M & T Mortg. Corp. v. Miller,* 2009 WL 3806691 *2 (E.D.N.Y. 2009). Accrual occurs when plaintiff is injured by the deceptive act or practice that violated the statute. *Gaidon,* 727 N.Y.S.2d at 35, 750 N.E.2d 1078; *Brady,* 2008 WL 2276518 *10. Such injury occurs when "when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon,* 727 N.Y.S.2d at 35, 750 N.E.2d 1078. Accrual is not dependent upon any later date when discovery of the alleged deceptive practice is said to occur. *M & T Mortg. Corp.,* 2009 WL 3806691 *2; *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,* 2007 WL 1601491 *14 n. 121 (S.D.N.Y.2007); *Wender v. Gilberg Agency,* 276 A.D.2d 311, 716 N.Y.S.2d 40, 41–42 (1st Dep't 2000).

### ii. *Disposition of the Motion to Dismiss the Section 349 Claim*

Defendant seeks dismissal of the Section 349 claim on the ground that the protection of the statute cannot be extended to those who, like Plaintiff, purchased goods for use in a business. The claim is also sought to be dismissed as time barred.

■■■ As to the first ground, the court rejects the argument that Plaintiff's status as a small business owner, standing alone, precludes him from satisfying the "consumer oriented," prong of a Section 349 cause of action. Plaintiff's amended complaint alleges widespread sale of Optiplex computers with capacitor defects, and a uniform pattern of deceptive conduct. This pleading is sufficient to survive a motion to dismiss.

■■■ With respect to the timeliness of the Section 349 claim, the court reiterates, as noted above, that accrual is not dependent upon discovery of either an injury or its specific cause. Instead, accrual occurs when Plaintiff first suffered injury. As to that issue, it is clear that the allegedly faulty capacitors were present in the computers purchased at the time of delivery in 2003. To the extent that Plaintiff's Section 349 claim is based upon the allegation that the deceptive practice was the shipping of computers with defective capacitors, that claim accrued in 2003 and, absent the development of facts that might support equitable tolling, is time-barred.

■■■ In addition to arguing that the shipment of defective computers violated Section 349, Plaintiff argues that Dell's post-sale handling of his warranty claim amounts to deceptive conduct upon which he bases his claim. The amended complaint is vague in its references as to when such allegedly deceptive conduct occurred. The court cannot say, at this stage of the proceedings, the date upon which Plaintiff

first suffered injury as a result of the alleged deceptive cover-up of the computer defect. The court therefore cannot dismiss the Section 349 based upon alleged deceptive post-delivery conduct, as untimely.

### C. Claims Based Upon Safety Issues

■ In addition to claiming economic losses stemming from the allegedly malfunctioning computers, Plaintiff claims that the computers were unsafe. Specifically, he argues that the defective capacitors could leak, and that such leaks could result in personal injury. Both the amended complaint and the papers submitted by Plaintiff in opposition to the motion to dismiss make clear that the claimed safety issues were never manifest in Plaintiff's computers, and he never suffered any injury as a result of any leaking capacitor. Under these circumstances, Plaintiff's claim to recover for possible safety hazards that have not occurred in the seven years since purchase of his computers, is not plausible. Plaintiff fails to plead any damage, and therefore fails to state a claim arising from any alleged safety issue. Accordingly, any such claim is dismissed. *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 741 N.Y.S.2d 9, 17 (2d Dep't 2002) (affirming dismissal of product liability claims where plaintiff failed to suffer or allege actual injury); *Hubbard v. General Motors Corp.*, 1996 WL 274018 *3 (S.D.N.Y.1996) (purchaser of allegedly defective product has no claim where the alleged defect has not manifested itself in purchaser's product); *Yost v. General Motors Corp.*, 651 F.Supp. 656, 657 (D.N.J. 1986) (allegation that a leak was "likely" to occur and "may" create a safety hazard insufficient to avoid dismissal for failure to allege damages).

### D. Claim for Unjust Enrichment

■ Under New York law, "a claim for unjust enrichment requires a plaintiff to establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey*, 448 F.3d 573, 586 (2d Cir.2006); *see also Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.* 373 F.3d 296, 306 (2d Cir. 2004); *Allstate Ins. Co. v. Rozenberg*, 590 F.Supp.2d 384, 395 (E.D.N.Y.2008); *Clark v. Daby*, 300 A.D.2d 732, 751 N.Y.S.2d 622, 623 (3d Dep't 2002).

■ A claim of unjust enrichment is in the nature of a "quasi-contract," *i.e.*, it is "an obligation the law creates in the absence of any agreement." *Diesel Props S.r.l. v. Greystone Business Credit II LLC,* 631 F.3d 42, 54 (2d Cir.2011); *see also; Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006). Where a valid contract governs the subject matter in a lawsuit, a plaintiff may not recover in quasi-contract, and it is appropriate to dismiss a claim for unjust enrichment. *See, e.g., Diesel*, 631 F.3d at 54 (affirming district court's dismissal of unjust enrichment claim).

■ The sale of the computers to Plaintiff was pursuant to a contract that contained specific warranty obligations, alleged, as set forth above, to have been breached by Dell. Dell's post-sale conduct, however characterized, took place in the context of its obligations pursuant to the contract of sale. Plaintiff attempts to distance the unjust enrichment claim from the contract of sale by arguing that the duty to warn of safety dangers is not a matter of contract. As discussed above, however, Plaintiff's safety claim does not survive this motion, and cannot therefore be relied upon to save the unjust enrichment claim. In short, where the claims arise out of a sale pursuant to a contract, Plaintiff does not state a claim for unjust

**486**

enrichment. The claim is therefore dismissed.

### CONCLUSION

Defendant's motion to dismiss is granted to the extent that the court dismisses the claim for unjust enrichment and any claim based upon the allegation of a safety hazard. The parties shall continue with discovery limited to the issues that remain. The Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED.