Lawrence ARGABRIGHT, Victoria Fecht, and Librado Montano, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

RHEEM MANUFACTURING COMPANY, Defendant.

Civil No. 15–5243 (JBS/AMD)

United States District Court, D. New Jersey.

Signed 06/23/2017

See also 201 F.Supp.3d 578.

472

Melanie H. Muhlstock, Esq., PARKER WAICHMAN LLP, 6 Harbor Park Dr., Port Washington, NY 11050, Counsel for Plaintiffs.

Aaron Van Nostrand, Esq., David Jay, Esq., GREENBERG TRAURIG LLP, 500 Campus Drive, Suite 400, P.O. Box 677, Florham Park, NJ 07932, Counsel for Defendant.

**OPINION**

SIMANDLE, Chief Judge:

## I. INTRODUCTION

This matter comes before the Court on Defendant Rheem Manufacturing Company's ("Rheem" or "Rheem Manufacturing") Motion to Dismiss the Amended Complaint. [Docket Item 49.] In this putative multistate class action, Plaintiffs Lawrence Argabright ("Argabright"), Victoria Fecht ("Fecht"), and Librado Montano ("Montano") allege that Defendant manufactured defective residential heating, ventilating, and air conditioning ("HVAC") systems under the Rheem and Ruud brand names. Plaintiffs assert the following claims in their Amended Complaint: breach of express warranty (Count I); breach of implied warranty of merchantability (Count II); fraudulent concealment (Count III); negligent misrepresentation (Count IV); violation of the Magnuson–Moss Warranty Act ("MMWA") (Count V); violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count VI); violation of New York General Business Law § 349 ("NYGBL") (Count VII); violation of the Arizona Consumer Fraud Act ("ACFA") (Count VIII); unjust enrichment (Count IX); and a claim for declaratory relief (Count X). [Docket Item 43 at 22–43.]

Defendant has moved to dismiss all claims in the Amended Complaint, with the exception of the claim for breach of implied warranty of merchantability as to Plaintiff Lawrence Argabright ("Argabright"). [Docket Item 49.] Plaintiffs have submitted a Response in opposition [Docket Item 55] and Defendant has submitted a Reply [Docket Item 56].

The general facts of this case were recited in the Court's previous Opinion and will not be repeated here. See Argabright v. Rheem Manufacturing Company, 201 F.Supp.3d 578, 587–90 (D.N.J. 2016). The Court will address factual allegations not made in the original complaint but that were added to the Amended Complaint, however, in the Discussion section, infra.

The Court will address the arguments as to each claim in turn. For the reasons set forth below, the Court denies in part and grants in part Defendant's Motion.

## II. STANDARD OF REVIEW [1]

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party.[2] A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is

---

1. The Court exercises jurisdiction over Plaintiffs' claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). See Argabright, 201 F.Supp.3d at 588 n.2.

2. The facts alleged are drawn from Plaintiffs' Amended Complaint [Docket Item 43] and from undisputedly authentic documents upon which Plaintiffs explicitly rely in their Complaint. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999).

Because Plaintiffs' breach of warranty claims are predicated upon the warranty Defendant provided with their products, the Limited Warranty Defendant submitted will properly be considered in connection with the earlier motion to dismiss. [Docket Item 8–2]. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). For purposes of this motion, the Court accepts Plaintiffs' allegations as true.

and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

In addition, the complaint must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 679, 129 S.Ct. 1937 (internal quotation marks and citation omitted).

Rule 9(b) of the Fed. R. Civ. P. requires particularized pleading for the conduct underlying Plaintiffs' fraud claims. Under Rule 9(b), the "circumstances" of the alleged fraud must be pleaded with enough specificity to "place defendants on notice of the precise misconduct with which they are charged." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Although the rule states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," and does not require the

plaintiff to plead every material detail of the fraud, the plaintiff must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (internal quotations and citations omitted).

## III. DISCUSSION [3]

### A. Breach of Express Warranty (Count I)

Plaintiffs complain that Defendant breached its Warranty "because the HVAC had a known latent defect and was substantially certain to fail within the warranty period, Mr. Argabright did not receive compensation for the costs of refrigerant to identify the failure, and he has not been reimbursed for the costs of refrigerant that was not used in connection with the normal use of his Rheem HVAC." [Docket Item 55 at 18.]

Plaintiffs also argue that Defendant's Warranty fails of its essential purpose because the remedy they chose was insufficient under the contract "because Defendant unreasonably delayed recovery under the warranty notwithstanding that it knew, but failed to disclose, that the evaporator coils were substantial[ly] certain to cause failure of the entire unit, depriving Mr. Argabright the substantial benefit of his purchase." [Id. at 19–20.] Finally, Plaintiffs argue that the "fact alleged here state a claim that the exclusion of refrigerant and labor costs" from the Warranty was unconscionable because Defendant knew or should have known that their HVAC units contained this defect when they sold them, that Plaintiffs and Class Members could

---

3. As discussed in its previous opinion, the Court will again postpone the choice of law analysis. See Argabright, 201 F.Supp.3d at 591 n.5. To the extent that the parties have briefed the applicability of New York and Arizona law and presented arguments based on those bodies of law, the Court will apply those bodies of law.

not have discovered the defect "before failure and certainly not until after the time of purchase," and that "Defendant unreasonably delayed providing remedies under the warranty until after owners had expended money on inspection costs that might reasonably have been avoided but for Defendant's concealment or omissions[.]" [Id. at 20–21.]

For reasons discussed infra, even construed liberally, the allegations in Plaintiffs' Complaint are insufficient to plausibly make out Plaintiffs' claims for breach of warranty as to Argabright. However, the Court will deny Defendant's Motion as to Fecht. Furthermore, because Arizona law disapproves of disposing with claims of unconscionability at the motion-to-dismiss stage, the Court will also deny Defendant's Motion as to Montano.

1. Defendant Did Not Breach the Terms of Its Warranty as to Argabright and Montano, but Plaintiffs State a Claim for Breach of Warranty as to Fecht

The Court previously ruled that Plaintiff did not plausibly state a claim for breach of express warranty, because, by its terms, the Limited Warranty [Docket Item 8–2] stated under "EXCLUSIONS," that the Limited Warranty did not apply to "parts installed with Covered Equipment or used in connection with normal maintenance, such as cleaning or replacing air filters, refrigerant, thermostats, tubing, or concrete pads"; the Limited Warranty also stated in a section titled "LABOR COSTS" that the warranty "does NOT cover any labor costs of expenses for service, NOR for removing or reinstalling parts." The Court ruled that Plaintiffs did not plausibly allege that Defendant breached the terms of the warranty because Defendant in fact replaced the defective coils; the items Defendant did not replace, in con-

trast, were those that were excluded by the terms of the warranty. [Docket Item 44 at 3–4 & 12–17.]

■ Under New Jersey law, "to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." Francis E. Parker Memorial Home, Inc. v. Georgia–Pacific LLC, 945 F.Supp.2d 543, 568 (D.N.J. 2013).

■ Plaintiff now alleges that although "the limited warranty has an express exclusion relating to refrigerant, that exclusion only excludes coverage for parts installed with the Rheem HVAC or used in connection with the normal maintenance, such as cleaning or replacing refrigerant ... [and] [t]he refrigerant Mr. Argabright purchased to discover and repair the evaporator coil defect was not ... used in connection with the Rheem HVAC's normal maintenance.... [That refrigerant] should never have had to be replaced because refrigerant does not escape the closed system absent a leak." [Docket Item 55 at 18.]

This argument is unavailing. First, as Defendant correctly notes, Plaintiffs have not alleged any additional factual circumstances regarding the terms of the warranty or any alleged breach thereof by Defendant that address the Court's original decision. [Docket Item 49–1 at 22.] All Plaintiffs allege is a different reading of the terms of the Limited Warranty; however, such an argument is not convincing.

The Limited Warranty provides that it "WILL NOT APPLY TO ... parts installed with Covered Equipment or used in

connection with normal maintenance, such as cleaning or replacing air filters, refrigerant, thermostats, tubing, or concrete pads." [Docket Item 8–2.] The natural, unconstrained reading of this exclusion is that the Limited Warranty does not apply to, inter alia, parts used in connection with normal maintenance. These non-covered parts include but are not limited to cleaning or replacing air filters, refrigerant, thermostats, tubing, or concrete pads. The Limited Warranty, by its express terms, excludes coverage for refrigerant. Plaintiffs do not point to any other provision in the Limited Warranty that would suggest Defendant extended warranty coverage for refrigerant, even that which was "used in connection" for some purpose other than normal maintenance. For those reasons, although Plaintiffs allege that Defendant failed to cover the costs of replacement refrigerant, the Court again finds that Plaintiffs have failed to allege a plausible claim that Defendant breached the terms of the Limited Warranty.

■ However, Plaintiffs raise new factual allegations with regard to Fecht that allow her claim for breach of the Limited Warranty to continue. The original complaint did not allege that Fecht ever contacted Defendant to seek compensation or reimbursement for the replacement coil the third-party technician installed in her HVAC, thereby not allowing the Court to "draw an inference that Fecht sought replacement by Defendant of the coil and Defendant refused, in violation of the terms of the warranty." [Docket Item 44 at 15 n.6.] However, the Amended Complaint alleges that Fecht, upon noticing that her Rheem HVAC was not adequately cooling, contacted "an independent Rheem Contractor, which sent a fully licensed professional technician" to service the HVAC on two occasions, replacing the evaporator coil on the second occasion. [Docket Item 43 at 20 ¶¶ 100–101.] Fecht alleges that although "the Limited Warranty only requires homeowners to contact a local service technician for repair, Ms. Fecht contacted Rheem directly in or around May 2015 when she still had no received reimbursement for the replacement evaporator coil"; however, "Defendant notified Ms. Fecht that, even though her Rheem HVAC was still covered by the Warranty, Rheem would not reimburse any cost incurred because she failed to contact Rheem and comply with the requirements of its warranty process." [Id. at 20–21 ¶¶ 102–103.]

The Limited Warranty states as follows:

HOW TO OBTAIN WARRANTY CLAIMS ASSISTANCE: You must promptly report any failure covered by this Limited Warranty to the installing contractor or distributor.... If the contractor is not available, simply contact any other local contractor handling the Maufacturer's heating or air conditioning products. The name and location of a local contractor can usually be found in your telephone directory or by contacting the Manufacturer's heating or air conditioning distributor.

[Docket Item 8–2 at 1.] Taking the facts in the light most favorable to Plaintiff and accepting Fecht's allegations as true, the Limited Warranty does not require that Fecht contact Rheem directly to seek warranty claims assistance, but rather only to contact the installing contractor, or, in the alternative, "any other local contractor" handling Rheem's HVAC products. Fecht alleges that she did so by contacting Pipe Doctor, "an independent Rheem Contractor," and in the event, did ultimately contact Rheem directly to seek compensation for the replacement evaporator coil. Fecht alleges that Rheem has not reimbursed her, in violation of the terms of the Limited Warranty. [Docket Item 43 at 21 ¶ 104.]

Given these factual allegations, the Court finds that Fecht has sufficiently alleged a claim that Defendant breached its express Limited Warranty by failing to reimburse her for the replacement coil.

### 2. The Warranty Does Not Fail of Its Essential Purpose

■ The Court previously ruled that the Limited Warranty does not fail of its essential purpose, contrary to Plaintiffs' claims. [Docket Item 44 at 17–21.]

■ New Jersey law permits parties to a contract to establish an exclusive or limited remedy under the terms of the contract. N.J.S.A. 12A:2–719(1)(b). However, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose," a remedy may be available under the New Jersey U.C.C. N.J.S.A. § 12A:2–719(2); see also id. cmt. 1 ("[W]here an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."). Courts have generally concluded that " 'so long as the buyer has the use of substantially defect-free goods, the limited remedy should be given effect.' " Viking Yacht Co., Inc. v. Composite One LLC, 385 Fed.Appx. 195, 207 (3d Cir. 2010) (quoting Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1085 (3d Cir. 1980)). But where the seller is "either unwilling or unable to conform the goods to the contract," Chatlos, 635 F.2d at 1085, or where "novel circumstances not contemplated by the parties" works to deprive a party of the

"substantial value" of its bargain, the remedy [provided for by a limited warranty] will not suffice. BOC Grp., Inc. v. Chevron Chem. Co., LLC, 359 N.J.Super. 135, 819 A.2d 431, 438 (2003) (internal quotations and citation omitted).

Plaintiffs claim that the Amended Complaint alleges a failure of the Limited Warranty's essential purpose "because Defendant unreasonably delayed recovery under the warranty notwithstanding that it knew, but failed to disclose, that the evaporator coils were substantial[ly] certain to cause failure of the entire unit, depriving Mr. Argabright the substantial benefit of his purchase." [Docket Item 55 at 19–20.] In support of this argument, Plaintiffs cite to ¶¶ 123 through 127 of the Amended Complaint. [Docket Item 43 at 24–25.] The gravamen of these paragraphs is that Defendant's "unreasonable delay" has been in "refus[ing] to adequately repair or replace Rheem HVACs in accordance with" Plaintiffs' understanding of the "warranty terms"; that the Limited Warranty does "not provide the means for purchasers to ... remedy damages to their structures associated with and caused by these defects"[4]; and that, because Defendant "knew, or was reckless in not knowing, about the defects," Defendant's failure to notify Plaintiffs and Class Members (as well as installers and distributors) about the defect "unreasonably delay[ed] any remedy under the warranty until after owners had expended money on inspection costs that might reasonably have been avoided[.]" [Id. at 24.]

The "unreasonable delay" cited by Plaintiffs in fact presents a circular argument. The only unreasonable delay alleged, by

---

4. Plaintiffs' argument about the damages to their structures "associated with and caused by" the defective coils is limited, of course, by the Limited Warranty's express exclusion of "ANY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES." [Docket Item 8–

2.] Plaintiffs do not allege any reason why this exclusion does not apply to such claims; therefore, any argument premised on Defendant's "unreasonable delay" in failing to pay for such consequential damages is unpersuasive.

the Court's reading of the Amended Complaint, has been in Defendant's failure to cover the costs of labor and refrigerant; however, this is what Defendant contends, and the Court has previously ruled, is excluded under the Limited Warranty. The Amended Complaint alleges that Plaintiffs Argabright and Montano in fact received replacement coils, in accordance with the Limited Warranty. For the reasons the Court explained previously, the Plaintiffs do not adequately allege a claim that the warranty failed of its essential purpose where Plaintiffs do not claim that "Defendant refused to repair or replace the non-working coils, or [that] Defendant's replacement parts failed to function, saddling Plaintiffs with non-working units still under warranty[.]" [Docket Item 44 at 19.] The Court will address, infra, Plaintiffs' argument that Defendant knew or recklessly failed to learn of the defect; however, even if this is true, this does not render the Limited Warranty one that fails of its essential purpose where Defendant did in fact replace the defective part and there continues to be no allegation that the replacement parts in turn failed to function properly.

The Court's review of the case law cited in support of the argument that the Limited Warranty failed of its essential purpose as to Fecht (citing to New York case law [Docket Item 55 at 22–23]) and Montano (citing to Arizona case law [id. at 24–25]) does not persuade the Court otherwise.

As to Fecht, Plaintiffs cite Siemens Credit Corp v. Marvik Colour, Inc., 859 F.Supp. 686, 689 (S.D.N.Y. 1994); Roneker v. Kenworth Truck Co., 944 F.Supp. 179 (W.D.N.Y. 1996); and Cayuga Harvester Inc. v. Allis–Chalmers Corp., 95 A.D.2d 5, 11–12, 465 N.Y.S.2d 606 (N.Y. App. Div. 1983). In Siemens, the plaintiff alleged that the defendant failed to repair or replace defective components free of charge, 859

F.Supp. at 696, and in Roneker, the plaintiff alleged that the defendant was "unable to repair" the problems with his truck, 944 F.Supp. at 185. In Cayuga, the plaintiff alleged "over 100 mechanical failures and over 100 parts replacement resulting in over 640 actual hours of machine downtime . . . [which led to] a full eight months [to use the equipment for its intended purpose]." 95 A.D.2d at 12, 465 N.Y.S.2d 606. The allegations here—that Fecht "had to incur additional expenses . . . to identify the cause of the failure"—are not analogous. [Docket Item 55 at 23.]

As to Montano, Plaintiffs cite Kalil Bottling Co. v. Burroughs Corp., 127 Ariz. 278, 619 P.2d 1055 (Ct. App. Ariz. 1980). However, Kalil simply reiterates that it is possible to state a claim that a warranty fails of its essential purpose where "the warrantor fails to correct the defect as promised within a reasonable time." 619 P.2d at 1059 (internal citations omitted).

Plaintiffs cite to the statement in Kalil that the warrantor must give the buyer "goods that conform to the contract within a reasonable time after a defective part is discovered," id., in support of the argument that Defendant unreasonably delayed compensating Montano by failing to replace Montano's coil at some point after Defendant learned that the coil was defective. [Docket Item 55 at 25.] The Court is left to presume that by this statement, Plaintiffs are suggesting that Defendant should have replaced Montano's coil no later than 2013, when Defendant began using aluminum coils to address formicary corrosion concerns. However, this argument is unpersuasive for a variety of reasons. First, the statement in Kalil is expressly focused on the buyer's perspective, and not what the warrantor discovered: "From the point of view of the buyer the purpose of the exclusive remedy is to give him goods that conform to the contract

within a reasonable time after a defective part is discovered." 619 P.2d at 1059 (internal citations omitted). Second, Plaintiffs do not plausibly allege in the Amended Complaint that Defendants had a duty to proactively replace copper coils that had not yet malfunctioned; nor do they plausibly allege that all of Defendant's copper coils in fact eventually malfunctioned. Because of this, it cannot be reasonable to construe Kalil's language to say that because Defendant did not replace Montano's coil before it was alleged to have malfunctioned, Defendant "fail[ed] to correct the defect within a reasonable time after [the] defective part [wa]s discovered."

No other allegations in the Amended Complaint support the contention that Defendant failed to correct the defect in Montano's coil after that defect was discovered; for that reason, Kalil is inapposite and it does not persuade the Court that the Limited Warranty failed of its essential purpose as to Montano.

### 3. The Warranty Is Not Unconscionable

The Court previously ruled that the Limited Warranty is not procedurally or substantively unconscionable. [Docket Item 44 at 23–28.] Plaintiffs' Amended Complaint does not provide a reason to disturb that decision.

■ As the Court previously stated, it is well-settled that courts "may refuse to enforce contracts that are unconscionable or violate public policy." Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C., Inc., 273 N.J.Super. 231, 641 A.2d 1056, 1058 (1994). In consumer goods transactions such as those involved in this case, " 'unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like, which are stamped unlawful under N.J.S.A. 56:8–2.' " Palmucci v. Brunswick

Corp., 311 N.J.Super. 607, 710 A.2d 1045, 1049 (1998) (internal citations omitted).

■ Unconscionability may be either substantive or procedural. New Jersey courts may find a contract term substantively unconscionable if it is "excessively disproportionate" and involves an "exchange of obligations so one-sided as to shock the court's conscience." Delta Funding Corp. v. Harris, 189 N.J. 28, 912 A.2d 104, 120 (2006) (internal citations omitted). Procedural unconscionability refers to unfairness in the formation of the contract, and may be shown by "a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." Muhammad v. Cty. Bank of Rehoboth Beach, Del., 189 N.J. 1, 912 A.2d 88, 96 (2006) (internal citations omitted).

■ Plaintiffs do not raise any new arguments or point to any newly-raised factual allegations in the Amended Complaint to support a claim that the Warranty was procedurally unconscionable. Plaintiffs simply reassert their more general argument that Defendant knew or should have known of the defect but failed to disclose it, while Plaintiffs could not have known of it before failure or purchase of the HVACs and that "Plaintiffs and Class Members had no meaningful choice with respect to the warranty terms." [Docket Item 55 at 21.] Because the crux of the procedural unconscionability argument seems to rely on the already-addressed assertion that Plaintiffs lacked bargaining power compared to Defendant and/or that the Limited Warranty was a contract of adhesion, the Court again finds that Plaintiffs have not pled a plausible claim for procedural unconscionability. See Brennan v. CIGNA Corp., 282 Fed.Appx. 132, 136

(3d Cir. 2008) ("More than a disparity in bargaining power is needed to show than an arbitration agreement between an employer and its employee was not entered into willingly"); Skeen v. BMW of N. Am., LLC, No. 13-1531, 2014 WL 283628, at *13 (D.N.J. Jan. 24, 2014) (noting that pre-printed contract of adhesion is not per se unconscionable).

 Plaintiffs also allege that the Limited Warranty is substantively unconscionable because Defendant knew or should have known the HVACs were defective when Defendant sold them to Plaintiffs; in support of this allegation, Plaintiffs point to complaints made online from 2009 to January of 2010, featuring the complaints of consumers whose Rheem HVACs: needed replacement coils; had leaking valves; needed replacement coils; needed several visits from a technician; and leaked and needed a replacement coil. [Docket Item 43 at 17–18 ¶ 85.] Plaintiffs also point to Defendant's decision in 2013 to replace copper coils with aluminum ones to address formicary corrosion concerns, without notifying consumers whose HVAC units had copper coils about this issue. [Id. at 16–17 ¶¶81–84.] The Court previously ruled that the original complaint did not adequately plead that Defendant knew or had reason to know that the copper coils were defective, given that the online complaints to which the Complaint previously referred post-dated the sale of the HVACs to Plaintiffs. [Docket Item 44 at 24–26.] These new allegations could conceivably address the Court's concern, despite Defendant's suggestion that the existence of pre–2010 online complaints does not go far enough to show that Defendant knew or should have known of the alleged defect at the time of sale to Plaintiffs. [Docket Item 49–1 at 27 n.7.]

However, as Defendant points out, the Court previously ruled as follows:

Plaintiffs' claim also fails because "a finding of unconscionability cannot be premised solely upon allegations that Defendant knew that a defect in the product might arise," and created a limited warranty designed to avoid fixing the defect. Suddreth [v. Mercedes–Benz, LLC], 2011 WL 5240965, at *3 [ (D.N.J. Oct. 31, 2011) ]. New Jersey courts have long held that such warranties are not so grossly unfair that they would be considered substantively unconscionable. See, e.g., T.J. McDermott Transp. Co. v. Cummins, Inc., [No. 14-4209,] 2015 WL 1119475, at *9 (D.N.J. Mar. 11, 2015) (fact that defendants knew of alleged defects when they made the warranties did not establish substantive unconscionability); Nelson v. Nissan N. Am., Inc., 894 F.Supp.2d 558, 565–66 (D.N.J. 2012) (allegation that defendant car manufacturer "knew with certainty" that transmission would fail just after expiration of the warranty period did not make warranty substantively unconscionable); Alban v. BMW of N. Am., No. 09-5398, 2011 WL 900114, at *9 (D.N.J. Mar. 15, 2011) (allegations that defendant knew defect would arise after expiration of the warranty "do not indicate that the time and mileage limitation clause in the warranty was unconscionable); Henderson v. Volvo Cars of N. Am., LLC, No. 09-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (manufacturer's mere knowledge that a part will fail after expiration of warranty period "does not alone make [a] time/mileage limitation unconscionable.").

The plaintiffs in the above cases raised claims of substantive unconscionability, alleging that defendant knew of the defect at the time they issued the warranty; knew when the defect would manifest; and "manipulated" the warranty's time period so as to avoid liability. Such

conduct, the courts held, did not make a warranty substantively unconscionable. As one court explained, this is because a manufacturer " 'must predict rates of failure of particular parts in order to price warranties,' " and " '[a] rule that would make failure of a part actionable based on such "knowledge" would render meaningless' " the limitations built into a warranty's coverage. T.J. McDermott, ... 2015 WL 1119475, at *9 ... (quoting Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986)); see also Majdipour v. Jaguar Land Rover N. Am., LLC., No. 12-7849, 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013) (explaining same). Although in the above cases, the product defects occurred after the expiration of the warranty period in the above cases, the reasoning applies with equal force here. Plaintiffs' allegation that Defendant knew of a latent defect at the time it issued its Warranty, even if true, does not render the warranty unconscionable. As a manufacturer, Defendant is within its right to create a limited remedy that minimizes its costs and obligations based on its prediction of the rate of failure of particular parts.

[Docket Item 44 at 26–28.] The Court continued, in a footnote:

The rule, admittedly, is severe, and grants little favor to consumers, but demonstrates the high standard that must be met for a contract to be ruled "substantively unconscionable." See Dalton v. Gen. Motors Corp., No. 05-727, 2005 WL 2654071, at *8 (D.N.J. Oct. 17, 2005) (" '[A] contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other.... Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to

shock the conscience.' ") (citation omitted).

In addition to the reasoning above, the Court finds nothing substantively unconscionable about specific terms of Defendant's Warranty. Defendant's warranty is for five years, which is not so short as to "shock the conscience." See, e.g., Nelson, 894 F.Supp.2d at 565–66 (D.N.J. 2012) (finding nothing substantively unconscionable about a five-year/60,000 mile warranty); Majdipour, 2013 WL 5574626, at *20 (finding nothing substantively unconscionable about a six-year/75,000 mile warranty). Moreover, a warranty that limits the buyer's remedies to repair or replacement of non-conforming goods, at the seller's option, has long been permitted by New Jersey courts. See, e.g., Palmucci ..., 710 A.2d [at] 1048 ...; Alban, 2011 WL 900114, at *9 (warranty provision stating that defendant car manufacturer would "repair or replace" any defective parts within four years or 50,000 miles was not unconscionable).

[Id. at 28 n.10.] The Court declines to disturb its original ruling.

The Court has also reviewed New York and Arizona law relating to unconscionability. See State of New York v. Avco Financial Serv., Inc., 50 N.Y.2d 383, 429 N.Y.S.2d 181, 406 N.E.2d 1075 (1980) (citing Williams v. Walker–Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)); Siemens, 859 F.Supp. at 696. [Docket Item 55 at 23–24.] With regard to Fecht, the Court does not find that Plaintiffs plausibly state a claim for unconscionability under New York law.

However, Arizona law does appear to require that the parties be presented with a reasonable opportunity to present evidence as to the "commercial setting, purpose and effect" of a contract to aid the court in making the determination, as a

matter of law, as to whether the contract or clause therein was unconscionable. Maxwell v. Fidelity Financial Servs., Inc., 184 Ariz. 82, 907 P.2d 51, 56 (1995). See also Angus Medical Co. v. Digital Equipment Corp., 173 Ariz. 159, 840 P.2d 1024, 1032 n.3 (Ct. App. Ariz. 1992); Southwest Pet Prods. Inc. v. Koch Indus., Inc., 89 F.Supp.2d 1115, 1122 (D. Ariz. 2000), aff'd in part, rev'd in part, 32 Fed.Appx. 213 (9th Cir. 2002). The Court will therefore deny Defendant's motion as to Plaintiffs' limited claim of unconscionability as to Montano "without prejudice to a summary judgment motion once discovery on that limited issue has been completed," Southwest Pet Prods., 89 F.Supp.2d at 1122. The Court notes, however, that "[t]he Arizona Supreme Court has emphasized that findings of unconscionability in a commercial setting are rare," id. (internal citations omitted), and the Court will at this time echo the words of the district court in Southwest Pet Products, when it stated that "given the extremely difficult burden [the plaintiff] would appear to have in demonstrating unconscionability, [the plaintiff] may be well-advised simply to let sleeping dogs lie." Id.

With the exception of the unconscionability claim solely as to Plaintiff Montano, because Plaintiffs do not submit any additional factual allegations to cure the defects noted in the Court's opinion of August 16, 2016, beyond allegations that online consumer complaints about Rheem HVAC units predated the sale of HVACs to Plaintiffs, the Court will not disturb its previous ruling that the allegations here do not support a plausibly-pled claim of substantive unconscionability as to Argabright and Fecht.

For the foregoing reasons, namely that Plaintiffs have not plausibly alleged that (1) Defendant violated the terms of the Limited Warranty as to Argabright and Montano, (2) the Limited Warranty fails of its essential purpose, (3) nor that the Limited Warranty is unconscionable as to Argabright and Fecht, the Court will dismiss Plaintiffs' claim for breach of express warranty except as to (1) the claim for breach of express warranty as to Fecht and (2) the claim of unconscionability with regard to Montano.

**B. Breach of Implied Warranty of Merchantability (Count II)**

1. The Court will not dismiss Fecht's claim as time-barred at this stage of the proceedings

 The Court previously ruled that "Plaintiffs have stated a plausible claim for breach of the implied warranty of merchantability," but that Fecht's claim was time-barred because causes of action based on implied warranties accrue when delivery of the product is made; for Fecht, this was at some point in 2010, and she did not file her claim before the four-year limitations expired under N.J.S.A. § 12A:2–725(1). [Docket Item 44 at 30; 33–35.]

 An implied warranty of merchantability "protect[s] buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose," Crozier v. Johnson & Johnson Consumer Co., 901 F.Supp.2d 494, 509 (D.N.J. 2012) (quoting Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992)), and "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." Henningsen v. Bloomfield Motors, 32 N.J. 358, 161 A.2d 69, 76 (1960). In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the general purpose for which it was manufactured and sold. See Altronics, 957 F.2d at 1105; Ferrari v. Am. Honda Motor

Co., 2009 WL 211702, at *3 (N.J. Super. Ct. App. Div. 2009).

Defendant moves again to dismiss Count II as to Fecht on the grounds that it is time-barred, and the Amended Complaint does not cure this previously-noted defect. [Docket Item 49-1 at 28–29.]

In response to Defendant's argument that Fecht's claim for breach of implied warranty is time-barred, Plaintiffs now assert that Fecht "has alleged sufficient facts to toll the statute of limitations for her implied warranty claim" because she "contacted a third party technician consistent with the limited warranty" and then "contacted Defendant directly and was told that her claim had been denied on the basis of a false interpretation of the warranty ... notwithstanding that her claim fell within the warranty period.... [Because] Ms. Fecht complied with the warranty and did not find out that Defendant would not fulfill its warranty obligations until after the expiration of the statute of limitations ... [h]er claim is timely." [Docket Item 55 at 28–29.] In support of this argument, Plaintiffs cite Statistical Phone Philly v. NYNEX Corp., 116 F.Supp.2d 468, 482 (S.D.N.Y. 2000) and Statler, D.C. v. Dell, Inc., 775 F.Supp.2d 474, 483 (E.D.N.Y. 2011). [Docket Item 55 at 29.]

In reply, Defendants argue that Fecht cannot successfully invoke the doctrine of equitable tolling "because she has not articulated any specific acts by Rheem that prevented her from timely filing suit or that she exercised due diligence in pursuing the discovery of her claims," citing to Jackson v. Eddy's LI RV Ctr., 845 F.Supp.2d 523, 533 (E.D.N.Y. 2012). [Docket Item 56 at 13.]

After careful consideration, the Court will decline at this time to dismiss Fecht's claim in the Amended Complaint for breach of implied warranty as being time-barred. Equitable tolling "applies where defendant's fraudulent conduct results in Plaintiff's lack of knowledge of a cause of action"; the essence of equitable tolling "is not whether [the p]laintiff was in possession of all the information necessary to prevail on [her] claims, but whether plaintiff had enough information to commence a lawsuit." Jackson, 845 F.Supp.2d at 533. Under the doctrine, "the statute of limitations will be tolled if the plaintiff pleads, with particularity, the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." Statistical Phone Philly, 116 F.Supp.2d at 482.

This presents a close question, to be sure. Fecht has alleged, in support of the element of wrongful concealment, only that Defendant failed to disclose to Plaintiffs that the problem of coil corrosion existed and that it failed to disseminate that information. [Docket Item 43 at 16–17 ¶ 84.] In support of the second element, Plaintiffs rely on the Court to infer that this failure to disseminate the information prevented Fecht from learning of the claim within the limitations period, and in support of the third element, Fecht alleges that she sought repair of her HVAC on or around June 18, 2014 (after having purchased it and had it installed sometime in 2010), again in August of 2014, and then contacted Defendant directly in May of 2015. [Docket Item 43 at 20 ¶¶ 99–102.] This lawsuit was filed in July of 2015. [Docket Item 1.]

The court in Statistical Phone Philly declined to toll the limitations period because, while the plaintiffs there "may not have had all the facts pertinent to their claims[,]" they "knew enough to sue" and

"admit that they were not misled by defendants' efforts at concealment." 116 F.Supp.2d at 482–83. The court in Jackson declined to toll the limitations period because the problems complained of by the plaintiff "should have, if true, been known to a diligent plaintiff" within the limitations period, the plaintiff alleged that the "defects were apparent almost immediately after delivery[,]" and the "alleged years of repairs were certainly enough" to put the plaintiff on notice of the duty to "make inquiry . . . prior to the expiration of the applicable Statute of Limitations." 845 F.Supp.2d at 533. Those circumstances are not present here, where the allegations suggest that Fecht did not know or have reason to know she had any potential cause of action against Defendant until August of 2014, when she may already have been outside the limitations period. Arguably, this period extended to May of 2015, when Defendant informed her it would not pay for the cost of replacing her coil.

In contrast, the court in Statler found that it was not in a "position, at this stage of the proceedings, to make factual findings" that would allow it to rule on "whether equitable principles can toll the running of the statute of limitations, or estop [the d]efendant from asserting a statute of limitations defense." 775 F.Supp.2d at 483. While the plaintiff there had not shown the requisite "extraordinary circumstances that justify the requested toll," the court denied the motion to dismiss the warranty claims because it was "simply too early to tell" whether those claims "may or may not be saved by equitable tolling." Id.

In an abundance of caution, the Court will decline to dismiss Fecht's claim for breach of the implied warranty as time-barred at this early stage of the proceedings. Defendant will, of course, be free to argue that the factual circumstances, as

developed in the eventual course of these proceedings, do not support the application of equitable tolling, and the Court will duly consider the record at that time. It may indeed prove to be the case that Fecht cannot show the necessary "extraordinary circumstances" to justify tolling here.

The Court cautions the parties that a general rule holding that a failure to disclose a known defect justifies tolling of the statute of limitations until the plaintiff's discovery of such a defect would likely be unreasonable, given the well-settled law that claims accrue for breach of implied warranties upon "delivery of the product . . . regardless of the purchaser's lack of knowledge." See Moulton v. LG Elecs. USA, Inc., No. 11-4073, 2012 WL 3598760, at *3 (D.N.J. Aug. 21, 2012); N.Y.U.C.C. 2–725(2) (the date of accrual for claims of breach of warranty is "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach"); Brady v. Lynes, No. 05-cv-6540, 2008 WL 2276518 (S.D.N.Y. June 2, 2008) ("Plaintiff's argument that the statute of limitations did not begin to run until he discovered the breach is contrary to black-letter law").

2. The Court will decline, at this stage of the proceedings, to dismiss Count II on the grounds that Fecht and Montano lack privity of contract with Defendant

▮ Defendant independently moves to dismiss Count II as to Fecht and Montano because they lacked privity of contract with Defendant and "well-settled . . . New York and Arizona law" requires privity to recover for breach of an implied warranty. [Docket Item 49–1 at 29.]

▮ New York law provides that implied warranty claims "require[ ] privity . . . with the manufacturer where only economic loss and not personal injury is alleged." Cali v. Chrysler Group LLC, No.

10-cv-7606, 2011 WL 383952, at *3 (S.D.N.Y. Jan. 18, 2011) (internal citations omitted). The same requirement exists in Arizona. Flory v. Silvercrest Industries, Inc., 129 Ariz. 574, 633 P.2d 383, 387 (1981).

In response, Plaintiffs submit that Plaintiffs were in privity with Defendant because "Defendant made direct representations" to Fecht and Montano regarding the warranty and the "conditions of the sale" and because "the dealerships from which [Fecht and Montano] purchased their Rheem HVAC were Rheem Team Top Contractors . . . and the dealerships and retail outlets market, warrant, and sell either directly or indirectly for Defendant." [Docket Item 55 at 29, citing Docket Item 43 at ¶¶ 55, 96, 106, 117.] Plaintiffs also argue that "numerous courts have concluded that privity is a question of fact ill-suited for resolution at the motion to dismiss stage" and that New York "recognizes an exception to the privity requirement for third-party beneficiaries like Plaintiffs and Class members[.]" [Docket Item 55 at 29–30.]

The Court finds that Plaintiff has made out a plausible allegation that the contractors who sold and installed Fecht's and Montano's HVACs were "Rheem Team Top Contractors" and thereby acted as agents of Defendant, which would establish the required privity. Of course, Defendant is free to renew this argument at a later stage of the proceedings should it believe that the development of the factual record reveals that the contractors in question cannot properly be understood as Defendant's agents. See Dewey v. Volkswagen AG, 558 F.Supp.2d 505, 524 n.17 (D.N.J. 2008) ("The Court finds that the issue of privity between the Defendants and the seller of Romeo's automobile involves issues of fact not appropriate for resolution at the motion to dismiss stage. Defendants

may renew this argument on a motion for summary judgment if they choose.").

For that reason, the Court declines to dismiss Count II as to Plaintiffs Fecht and Montano.

## C. Violation of the Magnuson–Moss Warranty Act (Count V)

The Court previously ruled that Count V, Plaintiffs' claim for violation of the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., would not be dismissed as to Plaintiffs Argabright and Montano with regard to their claims for breach of implied warranty. [Docket Item 44 at 37.]

Claims under the MMWA depend upon the disposition of the underlying state law warranty claims. See Johansson v. Cent. Garden & Pet Co., 804 F.Supp.2d 257, 265 (D.N.J. 2011) ("A claim under the MMWA relies on the underlying state law claim.") See also In re Shop–Vac Mktg. & Sales Practices Litig., 2014 WL 3557189, at *10 (M.D. Pa. July 17, 2014).

Defendant now argues that Plaintiffs' MMWA claims must be dismissed because "Fecht's implied warranty claim is time-barred and . . . both Fecht and Montano fail to allege the requisite privity to maintain an implied warranty claim." [Docket Item 49–1 at 30.] As the Court has already denied Defendant's Motion to Dismiss Count II of the Amended Complaint as to Fecht and Montano on these grounds, this argument as to the MMWA is unavailing.

Defendant also argues that "an action under the MMWA cannot be asserted until the warrantor has been given an opportunity to cure any alleged breach" and the Amended Complaint "contains no allegations whatsoever regarding any notice given by any Plaintiff to Rheem of the alleged breach, or that Rheem was afforded an opportunity to cure such a breach prior to

the filing of Plaintiffs' claims." [Docket Item 49–1 at 31; emphasis in original.] Defendant argues that ¶ 174 of the Amended Complaint cannot be used to support this required element because it is "a single, boilerplate allegation." [Id. at n.9.]

Plaintiff argues, and the Court agrees, that the Court already addressed this argument in its previous Opinion. [Docket Item 44 at 37 n.11.] Defendant does not raise any new argument on this point. Pursuant to the law of the case doctrine, see, e.g., Motamed v. Chubb Corp., No. 15-7262, 2016 WL 4581409, at *3 (D.N.J. Sept. 1, 2016), the Court sees no reason to revisit or disturb that ruling, and declines to dismiss Count V as it relates to Plaintiffs' claims for breach of implied warranty. For the same reasons, the Court declines to dismiss Count V as it relates to Fecht's claim of breach of the express warranty and Montano's claim of breach of warranty on the grounds of unconscionability.

### D. Fraudulent Concealment and Negligent Misrepresentation (Counts III and IV)

The Court previously dismissed Plaintiffs' claims of fraudulent concealment and negligent misrepresentation because the Court found that the allegations in the complaint were "insufficient to show that Defendant knowingly or negligently misrepresented or omitted a material fact about a possible defect in their HVAC units[.]" [Docket Item 44 at 38.]

Defendant renews their argument to dismiss these claims in the Amended Complaint on the grounds that (1) the economic loss rule bars recovery for these claims; (2) Plaintiffs have not pled their fraudulent concealment claim with the required particularity; and (3) Plaintiffs cannot allege a the requisite duty for successful allegation of a negligent misrepresentation claim.

[Docket Item 49–1 at 31–38.] For the reasons set forth below, the Court will grant Defendant's motion to dismiss Counts III and IV.

#### 1. Fraudulent Concealment

■ The Court previously dismissed Plaintiffs' claim of fraudulent concealment on two alternative grounds: first, that the allegations in the original complaint did not give rise to a reasonable inference that "Defendant knew about the alleged defect in its product when Plaintiffs purchased it[,]" thereby failing to make the required showing of "either an affirmative misrepresentation or an omission," and, second, because New Jersey law requires a showing that there was a legal duty to disclose omitted or concealed information that is the basis for a claim of fraudulent concealment and Plaintiffs did not make the required showing. [Docket Item 44 at 40–41, 41–43.]

While the online complaints from 2009 and early 2010 about Defendant's product, predating Plaintiffs' purchases, conceivably address the first reason, Plaintiff does not adequately cure the defects noted by the second reason for the Court's decision to dismiss the claim for fraudulent concealment.

■ Rule 9(b) requires that Plaintiff plead the fraudulent concealment claim with particularity. See Weske v. Samsung Elecs. Am., Inc., No. 2:10-4811, 2012 WL 833003, at *5 (D.N.J. Mar. 12, 2012). To allege fraudulent concealment, a plaintiff must plead with particularity five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350, 367

(1997). Cf. Bannister v. Agard, 125 A.D.3d 797, 798, 5 N.Y.S.3d 114 (N.Y. App. Div. 2015); Impact Fin. Servs., LLC v. Six400 Check Solutions, LLC, No. 10-0070, 2010 WL 5056212, at *2 (D. Ariz. Dec. 6, 2010) ("Under Arizona law fraudulent concealment occurs when one party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information"; plaintiff fails to state a claim when it "simply makes general, conclusory statements" not alleging "sufficient facts demonstrating the element of concealment" or "particular acts of concealment or identify each individual defendant's role in the concealment").

Again, the Amended Complaint does not include sufficient allegations tending to show the requisite element of concealment.

 Under New Jersey and New York law, the plaintiff must show that there was a duty to disclose because of a special relationship between the parties. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1185 (3rd Cir. 1993); Deutsche Zentral–Genossenchaftsbank AG v. HSBC North America Holdings, Inc., No. 12-cv-4025, 2013 WL 6667601, at *16 (S.D.N.Y. Dec. 17, 2013) (fraudulent concealment claims require a "special relationship"). Such a duty arises when there is a fiduciary relationship between the parties, when one party expressly reposits trust in another party (or such trust is necessarily implied from the circumstances), or when the relationship between the parties is so intrinsically fiduciary that a degree of trust is required to protect the parties, as in an insurance contract. See Lightning Lube, 4 F.3d at 1185. [Docket Item 44 at 41–42.] Plaintiffs do not, in their Amended Complaint, plead any additional facts that would allow for an inference that the requisite "special relationship" existed such that Defendant had an affirmative duty to disclose; nor does the Amended Complaint point to any actual affirmative act of misrepresentation or concealment by Defendant, nor to any misrepresented fact of which Defendant had knowledge.

To the extent that Arizona law does not require "a misrepresentation or a duty to disclose" for a claim of "fraudulent concealment" to "constitute common law fraud," Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 394 Pension Trust Fund, 201 Ariz. 474, 38 P.3d 12, 35–36 (2002), the Court does not find that applicable to Montano's claim of fraudulent concealment in the case at bar. In Wells Fargo, the Arizona Supreme Court "clearly distinguish[ed] ... concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence." 38 P.3d at 36. To the extent that "concealment" does not require a "duty to disclose" to constitute "common law fraud," then, Plaintiffs do not allege in the Amended Complaint any such concealment, but rather only nondisclosure. As Defendant correctly states, "the Amended Complaint is devoid of ... a particularized [allegation] that Rheem affirmatively or actively concealed any material fact." [Docket Item 49–1 at 36.] This does not meet the pleading standard for the claim under Rule 9(b). See Schwatka v. Super Millwork, Inc., 106 A.D.3d 897, 900, 965 N.Y.S.2d 547 (App. Div. N.Y. 2013); Impact Fin. Servs., 2010 WL 5056212, at *2.

The Court also finds relevant and analogous the reasoning in Weske, wherein the court found that complaints made by unspecified customers, predating the plaintiffs' purchases at issue in the case, were insufficient to establish that the defendant actually knew of the defect because the

allegations did "not allege who at Samsung learned of these complaints[,] . . . [and did] not identify any particular individuals who complained." 2012 WL 833003, at *5.

Because Plaintiff has not cured the defects noted in the earlier Opinion of the Court, the Court will again dismiss Plaintiffs' claim for fraudulent concealment.

### 2. Negligent Misrepresentation

The Court previously dismissed Plaintiffs' claim for negligent misrepresentation because the Plaintiffs did not allege, as is required under New Jersey law, that any omission by Defendant occurred in a context where Defendant "owe[d] an independent duty imposed by law." [Docket Item 44 at 44–45, citing Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 788 A.2d 268, 279–80 (2002).]

As the Court previously ruled:

Plaintiffs' claim for negligent misrepresentation fails for the same reasons that Plaintiffs' fraudulent omission fails. . . . [A]n omission-based negligent misrepresentation claim, like a claim of fraudulent concealment, is unsupported on the current facts because Plaintiffs have not shown that Defendant's relationship with Plaintiffs created a duty disclose the alleged defect. See Karu v. Feldman, 119 N.J. 135, 574 A.2d 420, 426 (1990); S. Broward Hosp. Dist. [v. MedQuist Inc.], 516 F.Supp.2d [370] at 397 [ (D.N.J. 2007) ]. Courts in this district have not hesitated to dismiss negligent misrepresentation claims by a purchaser against a manufacturer, absent allegations showing a special relationship. Nothing in the Complaint suggests the existence of an implied fiduciary duty, or that Plaintiffs "reposed special trust in [D]efendant prior to purchase," and there is ample support for dismissal. See Peruto v. TimberTech Ltd., 126 F.Supp.3d 447, 457 (D.N.J. Aug. 26, 2015) (Simandle, J.); Stevenson [v. Mazda Motor of America, Inc.], 2015 WL 3487756, at *9–10 [ (D.N.J. June 2, 2015) ] (car manufacturer had no duty to disclose alleged defect to car purchaser because "there [were] no allegations to suggest that defendant did anything that would have encouraged Plaintiff to place particular trust or confidence in it"); Coba v. Ford Motor Co., 2013 WL 244687 at *12 (D.N.J. Jan. 22, 2013) ("New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers"); Alin v. Am. Honda Motor Co., No. 08-4825, 2010 WL 1372308, at *14 (D.N.J. Mar. 31, 2010) (allegations that defendant car manufacturer failed to disclose a defect during sale were "insufficient to state a claim for negligent misrepresentation by omission" because there was no fiduciary or intrinsically fiduciary duty and plaintiff did not repose a special trust in defendant when he entered into car lease); Green v. G.M.C., No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003) (car manufacturer similarly had no duty to disclose a defect to purchasers of its cars).

[Docket Item 44 at 45–47.] The same hurdle is presented to Plaintiffs under New York law. See Naughright v. Weiss, 826 F.Supp.2d 676, 688 (S.D.N.Y. 2011) (to plead the requisite "duty arising out of a special relationship[,]" a plaintiff must "establish something beyond an ordinary arm's length transaction"); Grupo Sistemas Integrales de Telecomunicacion S.A. de C.V. v. AT & T Communications, Inc., No. 92-cv-7862, 1996 WL 312535, at *9 (S.D.N.Y. June 10, 1996) ("[T]o survive dismissal, the allegations that support the claim of a special relationship must suggest a closer degree of trust than that of

the ordinary buyer and seller") (internal citations omitted). Plaintiffs do not adequately allege that a special relationship existed such that Defendant owed them a duty.

█ While Arizona law requires that a plaintiff allege "that he was owed a duty of care by the defendant[,]" Southwest Non-Profit Housing Corp. v. Nowak, 234 Ariz. 387, 322 P.3d 204, 208 (Ct. App. Ariz. 2014), "no special relationship is required"; a party may owe a duty to "any foreseeable user of information." Leist v. Academy Mortgage Corp., No. CV-16-00314-PHX-DGC, 2016 WL 1593815, at *3 (D. Ariz. Apr. 20, 2016) (citing St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co., 154 Ariz. 307, 742 P.2d 808, 813 (1987)) (internal citations omitted). However, Plaintiffs fail to allege adequately, as is required, under Arizona law that Defendant "supplie[d] false information for the guidance of others in their business transactions" or "caused them" "pecuniary loss" "by their justifiable reliance upon the information" having "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." Leist, 2016 WL 1593815, at *3. The Amended Complaint is devoid of sufficient factual allegations to allow for a reasonable inference that Defendant failed to exercise reasonable care or competence in obtaining or communicating any alleged false information.

For those reasons, the Court will dismiss Plaintiffs' claim of negligent misrepresentation.[5]

### E. Statutory Claims (Counts VI, VII, and VIII)

The Court previously dismissed Plaintiffs' claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq., the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521 et seq., and New York General Business Law ("NYGBL") § 349, all of which prohibit deceptive practices in connection with the sale or advertisement of consumer goods. [Docket Item 44 at 47-67.]

The Court ruled that, although "Plaintiffs have pleaded the 'who, what, when, and where' of Defendant's misconduct with specificity, the allegedly deceptive advertising statements are too vague to constitute misrepresentations of material fact[.]" [Id. at 52.] The Court found that the "statements cited by Plaintiffs as the basis for their consumer fraud claims are conclusory and highly subjective, falling on the side of opinion rather than fact.... They are neither measurable nor concrete and are simply too imprecise to be considered material." [Id. at 55-56.] Because statements that violate these statutes must constitute "misrepresentation[s]" that are "material to the transaction" and are "statement[s] of fact, found to be false, made to induce the buyer to make the purchase," and not simply conclusory statements or "merely 'vague and ill-defined opinions' or 'puffery'," the Court dismissed these claims. [Id. at 54-55, citing Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350, 366 (1997) and CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P., 940 F.Supp.2d 141, 159 (D.N.J. 2013) (internal citations omitted).]

▪█ The only additional facts alleged in the Amended Complaint by Plaintiffs relevant to these claims appears to be the existence of the consumer complaints from

---

**5.** As in the Court's earlier Opinion, "[b]ecause Plaintiffs' claims for fraudulent concealment and negligent misrepresentation have been dismissed on the grounds above, the Court need not reach the question of whether the claims are barred by the economic loss rule." [Docket Item 44 at 47 n.13.]

2009 and early 2010. [Docket Item 43 at 17–18 ¶ 85.] Otherwise, Plaintiff appears to rely solely on allegations that "Defendant violated each of these statutes by its unconscionable warranty practices and by concealing and failing to disclose the defective nature of its Rheem HVAC." [Docket Item 55 at 37.] However, the Court previously ruled that the allegations supporting these claims of misrepresentation failed to state a claim for relief. [Docket Item 44 at 54–60.]

As the Court also already discussed in its earlier opinion, "to the extent that Plaintiffs rely on a theory that Defendant committed consumer fraud through material omission" or failure to warn about a defect, that argument is unavailing. [Docket Item 44 at 60 n.17.] Plaintiffs have not sufficiently alleged under the NYGBL that Defendant "alone possess[ed] material information that [wa]s relevant to the consumer and fail[ed] to provide this information." Gomez–Jimenez v. N.Y. Law Sch., 103 A.D.3d 13, 16–17, 956 N.Y.S.2d 54 (N.Y. App. Div. 2012) (internal citations omitted) (emphasis added). Nor can Plaintiffs state a claim under NJCFA that Defendant "[knew] with certainty that a product [would] fail," thereby violating the NJCFA "by failing to inform its consumers of the possibility of failure." Alban v. BMW of N. Am., LLC, No. 09-5398, 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010). Finally, Plaintiffs do not adequately plead that Defendant had a duty of disclosure under the ACFA, as they must do to state a claim for a material omission under that statute. Grimmelmann v. Pulte Home Corp., No. 08-1878, 2010 WL 2744943, at *4 (D. Ariz. July 9, 2010) (citing Haisch v. Allstate Ins. Co., 197 Ariz. 606, 5 P.3d 940, 944 (Ariz. Ct. App. 2000)).

Furthermore, the Amended Complaint does not address or cure the Court's previous ruling that the "Complaint [wa]s devoid of any facts which would create an inference that, at the time of their purchase, Argabright, Fecht, or Montano were aware of the allegedly false advertising claims." [Docket Item 44 at 62.] The relevant factual allegations are in the Amended Complaint at ¶ 88 (as to Argabright), ¶¶ 96 through 98 (as to Fecht), and ¶¶ 106 through 109 (as to Montano). [Docket Item 43 at 18–21.] However, the Amended Complaint does not allege that Plaintiffs saw or knew of the alleged misrepresentations or false advertising, only that (1) Argabright "assess[ed] the value and compatibility of several competing options" before choosing a Rheem HVAC; (2) Fecht "discussed the quality of various air conditioner brands with her contractor ... [who d]irectly and through Rheem marketing materials, ... represented that Rheem was a quality brand and that Rheem HVAC was suitable .... because it was superior to comparable products from other manufacturers; and (3) Montano did precisely the same thing as Fecht with his respective contractor. [Id.] Again, these allegations do not allow for an inference that Plaintiffs saw "the misleading statements" before they came into possession of the products they purchased, which they must do to properly allege causation or reliance under these statutes. [Docket Item 44 at 61, citing Goldemberg v. Johnson & Johnson Consumer Co., 8 F.Supp.3d 467, 480 (S.D.N.Y. 2014) (internal citations omitted).] As the Court previously ruled, the state statutory consumer fraud claims "also fail for failure to show causation." [Docket Item 44 at 63.]

Accordingly, Counts VI, VII, and VIII will be dismissed for failure to state a claim.

### F. Equitable Relief (Counts IX and X)

The Court previously dismissed Plaintiffs' claims for equitable relief "because

they [were] premised on the underlying allegations of deceptive acts and breach of express warranty, which the Court ... found [to have been] insufficiently pleaded." [Docket Item 44 at 67.]

■ The Court finds that Plaintiffs' claim for unjust enrichment is insufficiently pled. While at this stage of the proceedings, the Court will deny Defendant's Motion to Dismiss with regard to (1) the breach of express warranty claims as to Fecht and Montano, (2) the breach of implied warranty claims, and (3) the MMWA claims, that decision does not automatically render sufficient Plaintiffs' claim for unjust enrichment.

First, the Amended Complaint asserts that Defendant was unjustly "enriched and received substantial benefits at the expense of Plaintiffs and the Classes, including but not limited to the amount saved by deceiving Plaintiffs and Class Members to unfairly bear the responsibility for Defendant's warranty obligations ... as a result of its materially misleading and deceptive acts and practices ... [and its] deliberate and deceptive conduct[.]" [Docket Item 43 at 41–42 ¶¶ 232–34.] However, the claims that the Court has found to be sufficiently pled do not establish that Defendant committed any "materially misleading and deceptive acts and practices" or engaged in "deliberate and deceptive conduct."

■ Second, to "state a claim for unjust enrichment under New Jersey law, a [p]laintiff must establish that ... [p]laintiff expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." McGuire v. BMW of N. Am., LLC, No. 13-7356, 2014 WL 2566132, at *2 (D.N.J. June 6, 2014) (internal citations omitted). Plaintiffs do not plead or allege facts to support the contention that Defendant failed to remunerate Plaintiff and accordingly was enriched "beyond its contractual rights." The plaintiff's claim in McGuire was dismissed because he did not allege "that he did not receive the product he purchased ... [but rather] that Defendant concealed certain defects in and misrepresented the qualities and functionality of the navigation system in the vehicle Plaintiff purchased." Id. at *3. Similar requirements under New York and Arizona law necessitate dismissal of this claim as well. See Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012) (unjust enrichment only available when "defendant has not breached a contract nor committed a recognized tort" but nevertheless, e.g., "has received money to which he or she is not entitled" though "guilty of no wrongdoing"); Brooks v. Valley Nat. Bank, 113 Ariz. 169, 548 P.2d 1166, 1171 (1976) ("where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application").

The Court will, therefore, dismiss the claim for unjust enrichment.

■ As for Plaintiffs' claim for declaratory relief, the Court agrees with Defendant that Plaintiffs cannot "allege facts from which it appears there is a substantial likelihood that [they] will suffer injury in the future," as "a party requesting a declaratory judgment must" do. Lattaker v. Rendell, 269 Fed.Appx. 230, 233 (3d Cir. 2008). The Amended Complaint does not allege that Plaintiffs have suffered any loss or injury after their coils were replaced, and the allegation that Defendant began to use aluminum coils in 2013 not subject to the risk of formicary corrosion suggests that Plaintiffs cannot show the requisite "substantial likelihood" of future injury as to the larger class. For this reason, the

Court will dismiss Plaintiffs' claim for declaratory relief.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion with respect to Counts I (breach of express warranty as to Fecht and Montano), II (breach of implied warranty) and V (violation of Magnuson-Moss Warranty Act) and will grant Defendant's motion with respect to the remaining claims. The claims will be dismissed with prejudice, as it appears, after deficiencies remain in the Amended Complaint, that further amendments of these failed claims would be futile. The accompanying Order will be entered.